[No. 44555.   En Banc.   February 2, 1978.]

JOYCE E. CHILDERS, *Petitioner*, v. LELAND E.
CHILDERS, *Respondent*.

*Bonjorni, Harpold & Fiori, Duncan A. Bonjorni,* and *Stephen K. Harpold,* for petitioner.

*Donald E. Watson* and *Stephen R. Thomas,* for respondent.

*Kenneth W. Weber,* amicus curiae.

HICKS, J.—In a dissolution proceeding, may a parent be required to support a child beyond the age of majority while a college education is pursued? Within the sound discretion of the trial court, our answer is yes.

The trial court entered a decree of dissolution and awarded the custody of the children to the petitioner (wife), divided the property, fixed support payments to be paid by the respondent (husband), and awarded an attorney's fee. The court's order required husband to pay support for the parties' three sons while they attend college. Should each of the sons elect to complete work for a baccalaureate degree, each would be 22 years of age. That is 4 years beyond the present age of majority. RCW 26.28.010.

The Court of Appeals reversed as to the support order on the grounds that a parent owes no duty of support to a child who has attained the legal age of majority. The court reasoned that the privileges and immunities section of our state constitution (article 1, section 12) and equal protection under the fourteenth amendment to the United States Constitution would be violated by imposing such a duty, as there is no reasonable ground for making a distinction between divorced parents and married parents, the latter being "free to bid their children a fiscal farewell at age 18." *Childers v. Childers,* 15 Wn. App. 792, 796, 552 P.2d 83 (1976). We granted wife's petition for review. We reverse the Court of Appeals in part and affirm the trial court.

The parties were married in April 1953. They have three sons, born 1954, 1956 and 1959. Husband is a medical doctor practicing alone in King County. At trial, he was 53 years of age and wife was 45 years of age. Wife had no employment history other than as a waitress and some slight experience in helping around her husband's office. She was not college–trained.

Husband appealed to the Court of Appeals from that portion of the decree which requires him to pay $500 per month maintenance for his wife while she pursues a baccalaureate degree in an accredited school, college or university

as a full–time student; to pay tuition, books and miscellaneous educational fees of each son; and to maintain medical and dental insurance for the benefit of the wife and sons until such time as the sons are no longer dependent upon the parties for support. Husband abandons, in this court, his appeal concerning maintenance for his wife while she furthers her education.

RCW 26.08.110, the statute in effect prior to enactment of the 1973 Dissolution of Marriage Act, provided that support could be ordered only for minor children of a marriage:

> and shall make provision for costs, and for the custody, support and education of the *minor children* of such marriage.

(Italics ours.) Cases cited by husband in support of his contention that the parental duty of support terminates when the child reaches majority are all based on the above statute. Those cases, mainly *Sutherland v. Sutherland,* 77 Wn.2d 6, 459 P.2d 397 (1969), *Ditmar v. Ditmar,* 48 Wn.2d 373, 293 P.2d 759 (1956) and *Van Tinker v. Van Tinker,* 38 Wn.2d 390, 229 P.2d 333 (1951) all antedate the 18–year age of majority (enacted in 1971) and the 1973 dissolution act. They are therefore not controlling in this case.

The 1973 dissolution act, RCW 26.09, eliminated all reference to minority, and granted the court authority to order support for dependent children to whom a duty of support is owed. RCW 26.09.100 provides in part:

> [T]he court may order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount reasonable or necessary for his support.

That "dependent" child does not mean "minor" child is apparent from RCW 26.09.110, which states in part:

> The court may appoint an attorney to represent the interest of a minor *or* dependent child with respect to his custody, support, and visitation.

(Italics ours.) "When the term 'or' is used it is presumed to be used in the disjunctive sense, unless the legislative intent is clearly contrary." 1A C. Sands, *Statutes and*

*Statutory Construction* § 21.14 n.1 (4th ed. 1972) (cases cited). We have said "or" does not mean "and". *State v. Tiffany,* 44 Wash. 602, 87 P. 932 (1906).

■ We have also said that from a change in the wording of a statute, a change in legislative purpose shall be presumed. We quoted as follows in *Graffell v. Honeysuckle,* 30 Wn.2d 390, 400, 191 P.2d 858 (1948):

> Where a statute is amended, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the legislature. To the contrary, the presumption is that every amendment of a statute is made to effect some purpose, and effect must be given the amended law in a manner consistent with the amendment. The general rule is that a change in phraseology indicates persuasively, and raises a presumption, that a departure from the old law was intended, and amendments are accordingly generally construed to effect a change . . ."

We have no doubt that a change in the law was intended by the change in wording from the old support statute (referring to "minor", a fixed and arbitrary status) to the new support statute (referring to "dependent" and "emancipated", both of which are statuses to be determined under the facts of each case). The legislature may well have decided as a result of the lower majority age, that support obligations should no longer hinge on minority, but that trial courts should have discretion to determine when a duty of support is owed, or ceases to be, and when a child is dependent, or ceases to be.

■ That this was the intent of the legislature seems apparent from a reading of RCW 26.09.170:

> Unless otherwise agreed in writing or *expressly provided in the decree,* provisions for the support of a child are terminated by emancipation of the child or by the death of the parent obligated to support the child.

(Italics ours.) The italicized language evidences a legislative intent that the trial court have jurisdiction to enter a decree of support for children past age 18. How else could it be "otherwise . . . expressly provided in the decree"? A

statute cannot be construed so that an entire provision is meaningless, unless necessary to save the statute or act from constitutional infirmity, or to reconcile conflicting statutes. *Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971); *Miller v. Pasco,* 50 Wn.2d 229, 310 P.2d 863 (1957); *Groves v. Meyers,* 35 Wn.2d 403, 213 P.2d 483 (1950). It appears to us that the effect of the Court of Appeals construction of the act in *Childers v. Childers,* 15 Wn. App. 792, 552 P.2d 83 (1976) (*contra, In re Marriage of Melville,* 11 Wn. App. 879, 526 P.2d 1228 (1974) and *Reedy v. Reedy,* 12 Wn. App. 844, 846 n.1, 532 P.2d 626 (1975)) is to nullify or render meaningless the italicized phrase.

We construe the dissolution act as basing any support obligation on dependency, not minority, and ending the obligation at emancipation, not majority. Though it appears that emancipation, as the term is used in this act, is determined by factors in addition to age, we do not address the question as it is not an issue in this case.[1] RCW 26.09.170 states that child support obligations cease when the child becomes emancipated unless, as here, it is otherwise provided in the decree. Since the trial court is empowered under RCW 26.09 to order support to continue past a child's majority, we turn now to determine if there is an abuse of discretion in so ordering under the facts of this case.

The Childers' boys are children of the marriage. The other criteria set out in RCW 26.09.100 are that they be dependent and that their father owe them a duty of support. Both are matters of fact.

---

[1]We find the common meaning of "emancipate" in *Webster's Third New International Dictionary* (1971):

"1: to release (a child) from the paternal power, making the person released sui juris".

It is not absolutely linked to majority. *See* H. Clark, Jr., *Law of Domestic Relations* § 8.3 (1968); M. Inker & R. McGrath, *College Education of Minors,* 10 Boston B.J. No. 6, at 12, 13 (1966).

■■■ Although the legislature has defined dependent child variously throughout the code as 18 and under, under 21, or simply in financial need,[2] the chapter before us contains no definition. Legislative definitions generally control in construing the statutes in which they appear, but when the same word or phrase is used elsewhere the meaning depends on common usage and the context in which it is used, unaffected by the other statutory definitions. A dependent is, in our view and as used in this context, one who looks to another for support and maintenance, one who is in fact dependent, one who relies on another for the reasonable necessities of life. Dependency is a question of fact to be determined from all surrounding circumstances, or as the legislature put it: "all relevant factors". RCW 26.09.100. Age is but one factor. Other factors would include the child's needs, prospects, desires, aptitudes, abilities, and disabilities, and the parents' level of education, standard of living, and current and future resources. Also to be considered is the amount and type of support (*i.e.,* the advantages, educational and otherwise) that the child would have been afforded if his parents had stayed together. *See Puckett v. Puckett,* 76 Wn.2d 703, 458 P.2d 556 (1969).

We find no abuse of discretion in the trial court's determination that the Childers' boys were dependents. They lived at home and were not self–sustaining at the time the decree was entered. As to their status as dependents continuing through 4 years of continuous pursuit of a baccalaureate degree, we think it reasonable to assume that a medical doctor, himself with years of higher education which brings him a higher than average income, would willingly treat his sons as dependents if they chose and showed an aptitude for college, but for the fact of the divorce. Where, as here, the children would have most likely remained dependent on their father past 18 while they obtained a college education, it is within the discretion of

[2]*See, e.g.,* RCW 13.04.010, 51.08.030, 74.12.010, 74.13.020, 74.20.020, 74.20A.020(3).

the trial court to define them as dependents for that purpose.

This brings us to the language "duty of support". That there *is* a parental duty of support owing to children has been clear since 1881:

> The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately.

Code of 1881, § 2407. This statute remained unchanged until amended in 1969, when stepchildren were added for the duration "of the relationship of husband and wife." RCW 26.16.205.

■ We stated long ago that this duty of support can extend to education, the type and extent to be determined under the facts of each case. Reference is often had to Washington's example in this area, with the reasoning from the case of *Esteb v. Esteb,* 138 Wash. 174, 244 P. 264, 246 P. 27, 47 A.L.R. 110 (1926) most frequently cited. In *Esteb* we held that the court has the legal right to require a divorced father to provide funds for a college education for his minor daughter whose custody was in the mother. We quote extensively the reasoning, at pages 178, 182–83:

> As to the amount of education that should be considered necessary, courts have never laid down a hard and fast rule. . . .
>
> . . .
>
> Applying the rule as stated by the courts and the text–writers, it will be seen that the question of what sort of an education is necessary, being a relative one, the court should determine this in a proper case from all the facts and circumstances.
>
> Nor should the court be restricted to the station of the minor in society, but should, in determining this fact, take into consideration the progress of society, and the attendant requirements upon the citizens of today. . . . An opportunity [in the 1800's] for a common school education was small, for a high school education less, and for a college education was almost impossible to the average family, and was generally considered as being only within

the reach of the most affluent citizens. While there is no reported case, it is hardly to be doubted that the courts at that time would have even held that a high school education was not necessary, inasmuch as very few were able to avail themselves of it. But conditions have changed greatly in almost a century that has elapsed since that time. Where the college graduate of that day was the exception, today such a person may almost be said to be the rule. . . . That it is the public policy of the state that a college education should be had, if possible, by all its citizens, is made manifest by the fact that the state of Washington maintains so many institutions of higher learning at public expense. It cannot be doubted that the minor who is unable to secure a college education is generally handicapped in pursuing most of the trades or professions of life, for most of those with whom he is required to compete will be possessed of that greater skill and ability which comes from such an education.

That assisting a child with a college education, though at times referred to as a necessary, will not be a duty of support of all parents, but is circumstantial, is learned from *Golay v. Golay,* 35 Wn.2d 122, 123–24, 210 P.2d 1022 (1949):

[The rule is] that the expense of educating a child is included among the *necessities* for which a parent can be held liable. The quality and the quantity of necessities for which a parent is liable has been gauged in American and English Jurisprudence from time immemorial by the parents' station in life. Upon the question of *education as a necessity,* we would undoubtedly be constrained to hold that as far as the compulsory school attendance law applies, a parent would be liable in any case. A rich man, well able to pay, might very well be held for a college education of an extended and expensive sort. However, the father in this instance is not a rich man, and from the evidence in the record, can scarcely spare any money from his own needs.

Voluntary parental sacrifices to enable children to attend college are very common. The appellent's station in life, however, is such that the obligation should not be placed upon him by law against his will.

Thus, it has long been the law in Washington that a divorced parent may have a duty of support for college education if it works the parent no significant hardship and if the child shows aptitude. This duty is no longer limited by minority, hence the court need not resort to the stratagem used in *Underwood v. Underwood,* 162 Wash. 204, 298 P. 318 (1931) wherein we ordered the father to contribute to a trust fund during the child's minority so as to secure for the child a college education during his majority. The legislature having removed the jurisdictional disablement, the court is now free to order whatever is necessary and fair after full inquiry into the facts and circumstances.

We turn to the issue of the claimed constitutional infirmity which the Court of Appeals raised and decided sua sponte. The fact that married parents *may* legally bid their children "a fiscal farewell" at age 18 when some divorced parents *may* be legally required to provide financial support when they are able but do not choose to do so, led the Court of Appeals to its conclusion. The fact that most married parents choose willingly to make financial sacrifices for their children's education, including college and regardless of age, seems to have been disregarded.[3]

It is not the policy of this State to require divorced parents to provide adult children with a college education in all circumstances. If an absolute duty of support for such a purpose were imposed on divorced parents, there would perhaps be an unreasonable classification. Instead, what

---

[3]Children whose parents are still married most often continue to receive support past majority. R. Washburn, *Post–Majority Support: Oh Dad, Poor Dad,* 44 Temple L.Q. 319, 329 n.55 (1971).

Most young adults attending college receive parental support for a substantial percentage of the cost of a college education. *Making it: A Guide to Student Finances* 23 (A. Johnson ed., 1973); R. Freeman, *Crisis in College Finance? Time for New Solutions* 100 (1965); S. Harris, *A Statistical Portrait of Higher Education* 100, 114–23 (1972).

It should also be noted that not only college is at issue here. Most children have not graduated from high school by the time they reach their 18th birthday. Thus, the custodial parent, usually the mother, would be left with the full responsibility for the child's necessaries while the child is still in high school.

exists is the long standing special powers the courts have had (in equity, regardless of legislation) over the children of broken homes to assure that their disadvantages are minimized.

In allowing for divorce, the State undertakes to protect its victims. Perhaps there has been an equal protection problem in regard to the children who have been deprived of economic advantages which they would have had absent the remedy of divorce, and which children of married parents retain. Quoting from R. Washburn, *Post–Majority Support: Oh Dad, Poor Dad,* 44 Temple L.Q. 319, 327, 329 (1971):

> A number of courts adopt the policy that a child should not suffer because his parents are divorced. The child of divorced parents should be in no worse position than a child from an unbroken home whose parents could be expected to supply a college education. [Footnoted to *Jackman v. Short,* 165 Ore. 626, 656, 109 P.2d 860 (1941), where the court stated that "a child of divorced parents is in greater need of the help that a college education can give than one living in a home where marital harmony abides."] . . .
>
> . . .
>
> Where the disability is internally or externally caused, the child whose parents are still married will most often continue to receive support after majority. To terminate support when the parents are divorced creates a special disadvantage not shared by children whose parents remain together. If the father could have been expected to provide advanced education for his child, it is not unfair to expect him to do so after he has been divorced.

(Footnotes omitted.)

That the divorced parent, especially noncustodial, will sometimes not willingly provide what he otherwise would have but for the divorce, we recognized long ago in *Esteb v. Esteb,* 138 Wash. 174, 184, 244 P. 264, 246 P. 27 (1926):

> Appellant's counsel strenuously argued that it is the father's right to determine what education he will give his children, and that, if he decides not to give them a college education, and to save his money for other purposes, the courts should not interfere.

This rule is a salutary one, and should always be applied to a proper case. Whenever a father has the custody of a child, the law presumes that he will provide for the child education in that vocation for which it is best fitted, and which will enable it to meet the conditions of modern life. But can the courts indulge that presumption, where the custody of the child has been taken from the father? . . . Parents, when deprived of the custody of their children, very often refuse to do for such children what natural ʼinstinct would ordinarily prompt them to do. . . . In most cases the father, who is the one who holds the purse strings, and whose earning capacity is greater than that of the mother, is the one who is able to give the minor a proper education. To adopt the rule contended for by appellant would be to put the court, in providing for the custody of the child, in the dilemma of knowing that if the child is given to the mother the father would, in very many cases, refuse to give it an education greater than that required under the penalty of the law, and that the mother could not do so.

We again recognized the problem in *Underwood v. Underwood, supra* at 210:

Respondent's duty to his child is paramount. It is the birthright of every [child] to obtain at least a general and useful education. The responsibility of providing the necessary funds to assure this advantage to the minor rests primarily on the respondent. Untold sacrifices are made by parents who remain steadfast to their marital obligations in order to educate their children. The same responsibility rests on parents who seek and obtain a divorce. Parents who remain steadfast to their marital vows are frequently compelled by thrift, perseverance and economy to accumulate savings while their earning capacity is good, so as to be able to adequately educate their children when the time or occasion arrives.

In the 1973 act, the legislature simply allows the courts to secure for the children what they would have received from their parents except for the divorce, limited to that which is necessary for the children's and society's well–being and that which will not work an undue hardship on parents. Nothing more is expected of divorced parents than married parents, and nothing less.

In all probability more married parents will be making sacrifices financially for their children 18 and up than will the divorced parents who, in the sound discretion of the trial court, will have a legally imposed duty to do so. Even if the legislation does create a classification, it rests upon a reasonable basis. It is based on considerations already mentioned, and the facts known to the legislature and this court as well as to the layman, of the disruptions to homelife, bitterness and emotional upset which attend most marital breaks. The irremediable disadvantages to children whose parents have divorced are great enough. To minimize them, when possible, is certainly a legitimate governmental interest.

Note too that the governmental interest at stake here extends beyond the children to our nation as a whole. A well–educated citizenry is one of the major goals of a democratic society.

██ Under an equal protection challenge, a statutory classification, such as is claimed to exist in this case, is measured against the rational relationship test and upheld if rationally related to some legitimate government interest. We do not utilize a strict scrutiny test because the classification is not suspect, nor is there any fundamental right not to provide support for one's children past age 18. We have no trouble asserting that a rational relationship exists between the legislative scheme before us and the compelling State interest in seeing that children are properly provided for within the boundaries of the needs of the children and what parents can afford.

*Sparkman & McLean Co. v. Govan Inv. Trust,* 78 Wn.2d 584, 588, 478 P.2d 232 (1970), summarizes the applicable rules as follows:

> It is the well–established rule of law in this state that a statutory classification having some reasonable basis does not offend the equal protection clause or the privileges and immunities clause. *O'Connell v. Conte,* 76 Wn.2d 280, 283, 456 P.2d 317 (1969); *Boeing Co. v. State,* 74 Wn.2d 82, 86, 442 P.2d 970 (1968); *State v. Persinger,* 62

Wn.2d 362, 382 P.2d 497 (1963). In order to successfully attack a particular classification, it must be shown that such classification is manifestly arbitrary, unreasonable, inequitable, and unjust. *Treffry v. Taylor,* 67 Wn.2d 487, 408 P.2d 269 (1965); *Kelleher v. Minshull,* 11 Wn.2d 380, 119 P.2d 302 (1941).

Accordingly, the question is not whether the statute is discriminatory in nature, nor is it of paramount concern if the classification results in some inequality. The crucial determination is whether there are reasonable and justifiable grounds giving rise to the classification. *State v. Persinger, supra; State v. Kitsap County Bank,* 10 Wn.2d 520, 117 P.2d 228 (1941). Finally, in making this determination, it is recognized that the legislature has a wide range of discretion in defining the classifications and that such enactments are presumptively valid. *O'Connell v. Conte, supra.*

■ This "classification", which the Court of Appeals finds in this case, results in no actual inequality, but if it did there are reasonable and justifiable grounds for it. The State has an overriding interest in the welfare of its children, for the good of the individual children and for the greater good of society as a whole, and the statute here challenged is rationally related to the protection of that interest.

It has long been the rule in Washington that a court could require a divorced parent to support a defective child beyond majority. *Van Tinker v. Van Tinker,* 38 Wn.2d 390, 229 P.2d 333 (1951); *Schultz v. Western Farm Tractor Co.,* 111 Wash. 351, 190 P. 1007, 14 A.L.R. 514 (1920). A divorced parent has been held to support obligations past majority when there is a separation agreement to that effect. *Riser v. Riser,* 7 Wn. App. 647, 501 P.2d 1069 (1972). We now hold that there is no constitutional infirmity in RCW 26.09, and that it gives the trial court discretion, under proper circumstances and after consideration of all relevant factors, to decree support for the education of normal children past the age of majority.

The trial court has not here abused its discretion. It is to be understood that the pursuit of that education ordered

by the court should begin immediately after high school and follow a regular continuous course of study, barring unforeseen emergencies.

We affirm the trial court in all respects and affirm the Court of Appeals holding that petitioner is entitled to support while she seeks a baccalaureate degree. We reverse the Court of Appeals in regard to support of the Childers' sons terminating at age 18.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.