[No. 3702–II.   Division Two.   May 19, 1980.]

*In the Matter of the Marriage of* JUDY GIMLETT
*and* DAVID GIMLETT.

*Herbert Gelman,* for appellant.

*Robert L. Rovai,* for respondent.

PETRIE, J.—Two children, Joy and Deidre, were born of the marriage of David and Judy Gimlett. The decree of dissolution of the marriage, entered June 28, 1974, granted custody of both children to Judy, and ordered David to pay to Judy "toward the support, maintenance and education of the two minor children" the sum of $350 "per month per child until said children are emancipated." The decree was amended on June 9, 1975, by granting David custody of Joy, the older of the two children, and by terminating David's support payments for Joy. At that time David did not seek any contribution from Judy for Joy's support. He knew, also, that Joy would be 18 years old in 1976; and he was under the impression that support obligations ceased at that age.

Deidre became 18 on March 23, 1978, and David ceased paying support for her despite the fact that she continued to reside with Judy while attending college as a student. Judy sought to have David held in contempt of court for his failure to continue support payments for Deidre. The court declined to hold David in contempt, but found that Deidre was not emancipated, essentially because she was still dependent upon her parents "to provide for herself or to continue her education . . ." Accordingly, the court entered judgment for the arrearages and ordered David to pay those arrearages and to continue support payments.

David appeals; we reverse.

RCW 26.09.170 provides in part:

Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child or by the death of the parent obligated to support the child.

Obviously, under the terms of the decree and consistent with the statute, David's obligation to support Deidre terminated if she was "emancipated" upon attaining age 18. We recognize, of course, that it has been determined definitively that within the sound discretion of the trial court in a dissolution proceeding a parent may be required to support a child beyond the age of majority while a college education is pursued. *Childers v. Childers,* 89 Wn.2d 592, 575 P.2d 201 (1978). In *Childers,* the court construed the 1973 Dissolution of Marriage Act as "basing any support obligation on dependency, not minority, and ending the obligation at emancipation, not majority." *Childers,* at 597. Actually, of course, the obligation to support does not terminate upon emancipation; the obligation simply must be explicitly provided for if it is to continue after emancipation. Additionally, we note that the court hinted rather broadly that emancipation, as used in the dissolution act, was "not absolutely linked to majority." *Childers v. Childers, supra* at 597 n.1. Nevertheless, the court in *Childers* was not required to, nor did it, decide the issue upon the statutory language in RCW 26.09.170.

The case at bench requires that we do examine that statute. We start with the observation that the term "emancipation" is not defined in RCW 26.09 or elsewhere in the code. Further, we observe that the term "emancipation" appears in the dissolution act *only* at RCW 26.09.170.

With the benefit of hindsight we might inquire why the legislature would insert the vague term "emancipation" in a portion of the dissolution act which requires a "red flag" to signal to one or both of the parties to the dissolution proceeding that he/she or they will be required to pay child support beyond a given point in time. Perhaps an overly simplified reason is the possibility that the legislature did

not intend to insert a vague term into the act; it intended merely to utilize the conventional meaning of the term, *i.e.,* that emancipation occurs when the child is released from parental power and becomes sui juris. *See Webster's Third New International Dictionary* 738 (3d ed. 1968). Certain it is that the legislature had only 2 years earlier, by the comprehensive "Age Qualifications" act, made persons age 18 sui juris for all practical purposes. Laws of 1971, 1st Ex. Sess., ch. 292. Accordingly, the legislature intended to require a "red flag" to notify parents that they will be held to an obligation to pay child support beyond the new age of majority.

Why, then, not use the simple and precise term "majority"? The apparent reason is that the legislature intended to "red flag" custodial parents that if they sought child support beyond the date of *any* concept of emancipation, whether express or implied, complete or partial, absolute or conditional (*see American Prods. Co. v. Villwock,* 7 Wn.2d 246, 109 P.2d 570, 132 A.L.R. 1010 (1941)), they must obtain that result either in writing from the other spouse or have it expressly inserted in the dissolution decree.

In any event, the legislature did not intend to equate the term "emancipation" with "cessation of dependency." If the legislature had intended to equate those two terms, there would have been no necessity to provide for *any* termination, much less for a statutory expression that would require special recognition to establish a termination date.

We hold that, unless otherwise agreed in writing or expressly provided in the decree (or any subsequent modification thereof), provisions for child support terminate when the child is emancipated by attaining age 18 or is otherwise emancipated prior thereto. Applying that holding to the case at bench, David's *decretal* obligation to pay Judy support for Deidre ceased on March 23, 1978.

Finally, David also challenges the trial court's denial of his counterclaim against Judy for equitable contribution for support expenses which he incurred for Joy after he obtained her custody. The greatest percentage of those

expenses were incurred as college expenses after she attained age 18. In view of our analysis of the "emancipation" issue and David's apparently conscious choice to avoid presentation of that issue to the court in 1975, we find no error in the trial court's denial of that counterclaim. *See Henry v. Russell,* 19 Wn. App. 409, 576 P.2d 908 (1978).

Judgment reversed.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied June 10, 1980.

Review granted by Supreme Court August 15, 1980.