[Nos. 49309-0, 49458-4.   En Banc.   February 16, 1984.]

*In the Matter of the Marriage of* MARIGAIL WASHBURN, *Appellant, and* GERALD R. WASHBURN, *Respondent.*

*In the Matter of the Marriage of* JACK EUGENE GILLETTE, *Appellant, and* ALICE JUNE GILLETTE, *Respondent.*

Rosellini, J., dissents in part by separate opinion.

*Newton, Newton & Kight,* by *Thomas D. Adams,* for appellant Washburn.

*Aitken, Schauble, Patrick & Neill,* by *Robert F. Patrick,* for appellant Gillette.

*H. Michael Fields* (of *Anderson, Fields & Fields, Inc.*), for respondent Washburn.

*Irwin, Friel & Myklebust, P.S.,* by *Timothy Esser,* for respondent Gillette.

DIMMICK, J.—When one spouse supports the other through professional school in the mutual expectation that the community will enjoy the financial benefit flowing from the resulting professional degree, but the marriage is dissolved before that benefit can be realized, should the supporting spouse be compensated? Our answer is yes. The contribution of the supporting spouse to the attainment of a professional degree by the student spouse is a factor to be considered in dividing property and liabilities pursuant to RCW 26.09.080, or in awarding maintenance pursuant to RCW 26.09.090. The Washburn court failed to consider Mrs. Washburn's contribution to her husband's education in any respect. We thus reverse and remand for consideration of the appropriate compensation due Mrs. Washburn. The Gillette court did value Mrs. Gillette's contribution to Mr. Gillette's education and supplemented its property division with a lump–sum award of $19,000, to be paid over time. We affirm this award.

I

A. Washburn. The parties were married in 1971 while they were juniors at the University of Idaho. Upon their graduation in 1973, both parties worked. In the fall of 1974 they moved to Pullman, Washington, so that Mr. Washburn could attend veterinary school at Washington State University. From the fall of 1974 until February 1978 Mr. Washburn attended classes and held summer and part–time employment. During this same period Mrs. Washburn

worked full time. The parties then moved to Kentucky to allow Mr. Washburn to participate in an internship. Mr. Washburn received his degree in June 1978.

Upon Mr. Washburn's graduation the parties moved to Michigan where Mr. Washburn served an internship. Mrs. Washburn worked full time until their child was born in April 1979. In July 1979 the parties returned to Snohomish, where Mr. Washburn began practice as a veterinarian. They separated in January 1981 and a decree of dissolution was entered in June.

The trial court found that the parties' family home had been sold during the separation and the $4,400 proceeds equally divided. It awarded the remaining community property to the party in possession thereof (approximately $3,500 to Mrs. Washburn and $5,700 to Mr. Washburn) and required Mr. Washburn to pay all community debts, including educational loans. The trial court denied Mrs. Washburn's request for maintenance. The court also declined to characterize Mr. Washburn's degree as property, and refused to admit expert testimony which would have established the value of the degree through comparison of Mr. Washburn's earning potentials with and without it. Finally, it concluded that a judgment in favor of one spouse as against the other as compensation for contribution toward the cost of an education was impermissible.

Mrs. Washburn appeals that portion of the court's conclusion of law relating to Mr. Washburn's degree.

B. Gillette. The parties were married in 1968. In 1970 they both contributed equally to the purchase of a ranch. The ranch operation, however, failed. In 1974 the parties agreed that Mr. Gillette should obtain a degree in veterinary medicine. The trial court, in an unchallenged finding of fact, found that at this time the parties both anticipated they would share equally in the expected increased earning capacity of Mr. Gillette and agreed to undertake the effort. The court in addition found that Mr. Gillette promised Mrs. Gillette that if she would support him during his years in school, she would never have to work again.

Mr. Gillette obtained his undergraduate degree in biology in 1978 from Eastern Oregon State College and was accepted into the veterinary college at Washington State University. The parties separated in October 1981. During Mr. Gillette's schooling and while the parties were together, Mrs. Gillette worked full time, contributing her income and money from a personal injury settlement. She turned down offers of job promotions so that she could move with her husband to Washington State University. Mr. Gillette worked part time, and also received gifts from his father and disability payments. Mr. Gillette obtained his degree in veterinary medicine in 1982. A decree of dissolution was entered in March 1983.

The trial court found that the parties' lifestyle had been modest and their net worth diminished during the time Mr. Gillette had attended school. It affirmed the parties' own division of their community property (approximately $13,295 to Mrs. Gillette and $7,540 to Mr. Gillette). It charged Mr. Gillette with the educational loans incurred prior to and after separation. Mrs. Gillette agreed to pay past taxes.

The trial court concluded that neither the professional degree nor the increased earning capacity resulting from that degree were property subject to division. However, it awarded Mrs. Gillette a judgment of $19,000 as an "equitable right to restitution," which it calculated as follows:

> During the 7½–year period the Petitioner was in school, the Respondent contributed an excess of $24,000.00 to the community. It is reasonable to assume that she consumed one–half that amount. During that time she lived a more spartan life than would have otherwise been necessary. There is no source of funds at present from which to order immediate repayment. Inflation had a very dramatic effect upon the value of the dollar during the period of the Petitioner's schooling. Petitioner has therefore benefited from the $12,000.00 excess contribution. The wife is receiving property and liabilities with a net value of $8,800.00 more than one–half of the parties' net worth and that sum is therefore subtracted from

$12,000.00, leaving a $3,200.00 deficit. An additional sum of $12,000.00 should be added to reimburse the wife for 7½ years of reduced living standards and a reduced opportunity to accumulate property. This is based upon the theory that if the Petitioner had worked full–time instead of going to school he would have at least equalled Respondent's earnings, and the Respondent would have benefited from one–half of that increased earning ability. In addition, the wife would have had better working conditions and security had she taken the promotions offered at the time. The $12,000.00 added to $3,200.00 equals $15,200.00. To adjust for inflation, the figure should be increased by 25%, which adds $3,800.00 for a total of $19,000.00.

Conclusion of law 4. Clerk's Papers, at 75–76.

The trial court also found Mrs. Gillette was entitled to maintenance in the amount of $1 per year.

Mr. Gillette appeals from the portion of the decree requiring him to pay $19,000 and maintenance. Mrs. Gillette cross–appeals contending Mr. Gillette's increased earning capacity resulting from the education is property which should be valued and divided.

## II

The cases at bar are representative of a situation which is so familiar as to be almost a cliche. A husband and wife make the mutual decision that one of them will support the other while he or she obtains a professional degree. The educational years will be lean ones for the family not only because of heavy educational expenses, but also because the student spouse will be able to earn little or nothing. Moreover, the supporting spouse may be called upon to postpone his or her own education or forgo promotions and other valuable career opportunities in order to find a job near the student spouse's school. These sacrifices are made in the mutual expectation that the family will enjoy a higher standard of living once the degree is obtained. But dissolution of the marriage intervenes. Because the family spent most of its financial resources on the degree, there may be few or no assets to be distributed. The student spouse has

the degree and the increased earning potential that it represents, while the supporting spouse has only a dissolution decree.

## A

Other courts have responded to this all too common situation in a variety of ways.

A few appellate courts adopt the view that the professional degree (or the enhanced earning potential which it represents) is property which must be valued and distributed upon dissolution of the marriage. These courts differ in their valuation of the degree or earning potential. *See Woodworth v. Woodworth,* 126 Mich. App. 258, 337 N.W.2d 332 (1983); *In re Marriage of Horstmann,* 263 N.W.2d 885 (Iowa 1978).[1]

Another line of cases holds that, although a professional degree is not property, the supporting spouse is entitled to restitution of the money he or she spent toward the attainment of the degree, in order to prevent unjust enrichment of the student spouse. The formula used to determine the amount of restitution varies from court to court. *See Hubbard v. Hubbard,* 603 P.2d 747 (Okla. 1979); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981).

Still other courts find the solution in an award of maintenance to the supporting spouse. One court grants "reimbursement alimony" equal to the amount spent by the supporting spouse toward the education. *See Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982). Others recog-

---

[1]*Inman v. Inman,* 578 S.W.2d 266 (Ky. Ct. App. 1979), *modified,* 8 Fam. L. Rep. (BNA) 2329 (Ky. Ct. App. Mar. 12, 1982), *rev'd,* 648 S.W.2d 847 (Ky. 1982) is often cited as support for the proposition that a professional degree is marital property in which the supporting spouse has an interest. The authority of the original *Inman* decision is questionable in light of the later decision in the same case by the Kentucky Supreme Court. The Kentucky Supreme Court stated in dicta that an educational degree received by one spouse while the other spouse contributes financially to the cost of obtaining the degree is not, upon dissolution of the marriage, marital property. The court did, however, recognize the need to fairly compensate the supporting spouse when the marriage ends before the family realizes the expected benefits of the degree. *Inman v. Inman,* 648 S.W.2d 847, 852 (Ky. 1982).

nize the contribution of the supporting spouse as a basis for awarding maintenance, but do not prescribe a formula for determining the amount. *See Moss v. Moss,* 80 Mich. App. 693, 264 N.W.2d 97, *appeal denied,* 402 Mich. 946 (1978); *Magruder v. Magruder,* 190 Neb. 573, 209 N.W.2d 585 (1973); *Daniels v. Daniels,* 20 Ohio Ops. 2d 458, 185 N.E.2d 773 (Ct. App. 1961); *In re Marriage of Lundberg,* 107 Wis. 2d 1, 318 N.W.2d 918 (1982).

Another approach is to consider the supporting spouse's contribution to the attainment of the professional degree when dividing marital assets between the parties. *See In re Marriage of McVey,* 641 P.2d 300 (Colo. Ct. App. 1981); *Vaclav v. Vaclav,* 96 Mich. App. 584, 293 N.W.2d 613 (1980); *In re Marriage of Vanet,* 544 S.W.2d 236 (Mo. Ct. App. 1976).

Finally, some courts simply deny any recovery to the supporting spouse. *See Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (Ct. App. 1981); *In re Marriage of Sullivan,* 134 Cal. App. 3d 484, 184 Cal. Rptr. 796 (1982); *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978); *In re Marriage of Goldstein,* 97 Ill. App. 3d 1023, 423 N.E.2d 1201 (1981); *Wilcox v. Wilcox,* 173 Ind. App. 661, 365 N.E.2d 792 (1977); *Severs v. Severs,* 426 So. 2d 992 (Fla. Dist. Ct. App. 1983); *Muckleroy v. Muckleroy,* 84 N.M. 14, 498 P.2d 1357 (1972); *Lesman v. Lesman,* 88 A.D.2d 153, 452 N.Y.S.2d 935 (1982); *Frausto v. Frausto,* 611 S.W.2d 656 (Tex. Civ. App. 1980). Generally, these courts deny recovery because they cannot find a legal label for the requested award which seems to fit. Designation of the degree as "property" which may be valued and equitably divided is rejected because the degree, which cannot be sold, assigned or inherited, lacks the traditional attributes of property. *See Graham,* at 432. Unjust enrichment, which would place a value on the supporting spouse's contribution, is rejected as inappropriate in the context of marriage, which is "more than an economic undertaking." *Lesman,* at 159. Maintenance is rejected because the supporting spouse is capable of self–support. *Wilcox,* at 665. The ability to

consider the supporting spouse's contribution in dividing marital assets is acknowledged, but proves useless because there are no assets. *See Graham,* at 433.

## B

In view of the fact that fault is an impermissible consideration in a dissolution proceeding in this state,[2] we are disinclined to compensate the supporting spouse under the theory of unjust enrichment, as was done in *Hubbard* and *DeLa Rosa.* Unjust enrichment is a contract implied at law requiring a person to make restitution to the extent he has been unjustly enriched. Not only must the person be enriched, but the enrichment must be unjust. *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 646, 618 P.2d 1017 (1980). To require trial courts to determine whether the student spouse had been *unjustly* enriched by the efforts of the supporting spouse would invite the introduction of evidence as to who was at fault in the termination of the marriage before the fruits of the degree could be realized. Nor are we inclined to address at this time the somewhat metaphysical question of whether a professional degree is "property." However, we need not join the ranks of those courts which deny recovery. The liberal provisions of our dissolution of marriage act, codified in RCW 26.09, provide a flexible way for courts to fairly compensate supporting spouses in the state of Washington.

RCW 26.09.080 governs the distribution of property and liabilities:

> In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of

---

[2]The dissolution of marriage act of 1973 eliminated fault as a relevant consideration in a dissolution proceeding. Under RCW 26.09.030, the sole basis for dissolution of a marriage is that it is irretrievably broken. RCW 26.09.080 and RCW 26.09.090 further provide that marital misconduct is not to be considered by the court in distributing the property and liabilities of the parties, or awarding maintenance.

the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

(1) The nature and extent of the community property;

(2) The nature and extent of the separate property;

(3) The duration of the marriage; and

(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

As this provision makes clear, a division of property and liabilities is controlled not by their character as separate or community, but rather by what is just and equitable, taking into account the economic circumstances of the parties. All relevant factors must be considered by the trial court in its attempt to achieve an equitable distribution.

RCW 26.09.090 controls the awarding of maintenance:

(1) In a proceeding for dissolution of marriage, legal separation, declaration of invalidity, or in a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after considering all relevant factors including but not limited to:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, physical and emotional condition, and

financial obligations of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance.

Under this provision, the only limitation placed upon the trial court's ability to award maintenance is that the amount and duration, considering all relevant factors, be just. Additionally, RCW 26.09.170 authorizes the court to continue the maintenance obligation beyond the death of either party or the remarriage of the party receiving maintenance.

When a person supports a spouse through professional school in the mutual expectation of future financial benefit to the community, but the marriage ends before that benefit can be realized, that circumstance is a "relevant factor" which must be considered in making a fair and equitable division of property and liabilities pursuant to RCW 26.09.080, or a just award of maintenance pursuant to RCW 26.09.090. A professional degree confers high earning potential upon the holder. The student spouse should not walk away with this valuable advantage without compensating the person who helped him or her obtain it.

We have said that the supporting spouse may be compensated through a division of property and liabilities. In many cases, however, the wealth of the marriage will have been spent toward the cost of the professional degree, leaving few or no assets to divide. Where the assets of the parties are insufficient to permit compensation to be effected entirely through property division, a supplemental award of maintenance is appropriate.

With respect to maintenance, we recognize that the spouse who is capable of supporting someone through school will in most cases also be capable of supporting him or herself after the marriage is dissolved. However, under the extremely flexible provisions of RCW 26.09.090, a demonstrated capacity of self–support does not automatically preclude an award of maintenance. Indeed, the ability of

the spouse seeking maintenance to meet his or her needs independently is only *one* factor to be considered. RCW 26.09.090(1)(a). The duration of the marriage and the standard of living established during the marriage must also be considered, making it clear that maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time. RCW 26.09-.090(1)(c), (d). Moreover, the factors listed in the statute are not exclusive. The trial court may consider the supporting spouse's contribution and exercise its broad discretion to grant maintenance, thereby in effect allowing the supporting spouse to share, temporarily, in the lifestyle which he or she helped the student spouse to attain.[3]

In making an equitable property division or awarding maintenance, the trial court exercises broad discretionary powers. Its disposition will not be overturned on appeal absent a showing of manifest abuse of discretion. *See Baker v. Baker,* 80 Wn.2d 736, 747, 498 P.2d 315 (1972); *In re Marriage of Glorfield,* 27 Wn. App. 358, 360, 617 P.2d 1051, *review denied,* 94 Wn.2d 1025 (1980); *In re Marriage of Nicholson,* 17 Wn. App. 110, 116, 561 P.2d 1116 (1977). We are reluctant to encroach upon this discretion by providing a precise formula prescribing the amount of property to be distributed or maintenance to be awarded to the supporting spouse.

Instead, we direct the trial court to consider the following factors, among others, in determining the proper amount of compensation for the supporting spouse:

1. The amount of community funds expended for direct

---

[3]We wish to emphasize that by permitting the supporting spouse to be compensated with an award of maintenance, we are not subjecting the student spouse to some form of involuntary servitude by requiring him or her to work at the chosen profession against his or her will. The ability of the student spouse to pay maintenance is a relevant factor which must be considered in making an award to the supporting spouse. RCW 26.09.090(1)(f). If the student spouse permanently abandons his or her profession, and his or her ability to pay is substantially impaired as a result, this change of circumstances might justify a modification of the maintenance awarded to the supporting spouse. RCW 26.09.170.

educational costs, including tuition, fees, books, and supplies. We do not include living expenses incurred by the student spouse as a factor because those expenses would have existed regardless of whether the student spouse pursued a professional education.

2. The amount which the community would have earned had the efforts of the student spouse not been directed toward his or her studies. By including this factor, we do not imply that parties to a marriage have a general duty to the community to realize their full economic potential. However, when the parties to a marriage make the joint decision that one spouse should obtain a professional degree or license, the community sacrifices not only the funds spent for direct educational or training costs, but also the earnings of the student spouse, if he or she would otherwise have been working. These sacrifices were made in the expectation that the community would receive financial benefit in the form of increased future earnings. When this expectation is frustrated by dissolution of the marriage, it would be inconsistent to permit the trial court to compensate the supporting spouse for the funds spent, but not the funds forgone.

3. Any educational or career opportunities which the supporting spouse gave up in order to obtain sufficiently lucrative employment, or to move to the city where the student spouse wished to attend school.

4. The future earning prospects of each spouse, including the earning potential of the student spouse with the professional degree.

Factors 1 and 2 reflect funds sacrificed by the community in order to obtain the education or training; accordingly, the supporting spouse should be awarded no more than his or her one–half interest therein. The trial court may take the effect of inflation during the educational years into account. Factor 3 is included to permit the trial court to adjust the property division or maintenance award as appears just and equitable, in light of the opportunities

forfeited by the supporting spouse.[4] Factor 4 simply applies to the present context the long–standing rule that the economic condition in which a dissolution decree leaves the parties is a paramount concern in determining issues of property division and maintenance. *See DeRuwe v. DeRuwe,* 72 Wn.2d 404, 408, 433 P.2d 209 (1967); *In re Marriage of Dessauer,* 97 Wn.2d 831, 839, 650 P.2d 1099 (1982).

We point out that where a marriage endures for some time after the professional degree is obtained, the supporting spouse may already have benefited financially from the student spouse's increased earning capacity to an extent that would make extra compensation inappropriate. For example, he or she may have enjoyed a high standard of living for several years. Or perhaps the professional degree made possible the accumulation of substantial community assets which may be equitably divided. However, our attention today is centered on the more difficult case of the marriage that is dissolved before the supporting spouse has realized a return on his or her investment in family prosperity.

Some might object that by recognizing the supporting spouse's right to compensation, we are treating marriage as a commercial enterprise. That is not our intent nor the result of this decision. Rather, as was well stated by the court in *Mahoney v. Mahoney,* 91 N.J. 488, 500, 453 A.2d 527 (1982):

> This Court does not support reimbursement between former spouses in alimony proceedings as a general principle. Marriage is not a business arrangement in which the parties keep track of debits and credits, their accounts to be settled upon divorce. Rather, as we have said, "marriage is a shared enterprise, a joint undertaking . . . in many ways it is akin to a partnership." But every

---

[4]Another solution available to trial courts in similar cases which was not sought by either Mrs. Washburn or Mrs. Gillette is to allow the supporting spouse to obtain an equal educational opportunity at the student spouse's expense. *See Childers v. Childers,* 15 Wn. App. 792, 552 P.2d 83 (1976), *aff'd in relevant part,* 89 Wn.2d 592, 575 P.2d 201 (1978).

joint undertaking has its bounds of fairness. Where a partner to marriage takes the benefits of his spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy.

(Citations omitted.)

Turning to the cases before us today, we note that Mrs. Gillette supported her husband through undergraduate and veterinary school in the mutual expectation that they would both share in the increased earnings which the veterinary degree would produce. Indeed, Mr. Gillette promised his wife that once he received his degree, she would never have to work again. These expectations were shattered when the parties separated only months before Mr. Gillette received his veterinary degree.

The parties agreed upon a division of community assets, leaving the trial court little opportunity to compensate Mrs. Gillette entirely through property division. To supplement the property division, the court awarded Mrs. Gillette $19,000 as an "equitable right to restitution," based upon her contribution to the attainment of the veterinary degree. The court made this lump–sum award payable over time, thereby reducing the burden on Mr. Gillette.

The trial court labeled its $19,000 award "restitution." However, because the award will be paid in installments, thereby equalizing the parties' standard of living for a limited time, it is in effect an award of lump–sum maintenance. Our concern is not the particular label applied to this award, but rather its fairness as determined by those factors set out in RCW 26.09.090. *See In re Marriage of Hadley*, 88 Wn.2d 649, 658, 565 P.2d 790 (1977).

The trial court calculated the amount of its award to Mrs. Gillette without the benefit of the four factors set forth as guidelines herein. However, RCW 26.09.090 places emphasis on the justness of an award, not its method of calculation. Here, Mrs. Gillette supported her husband

through 7½ years of school. She turned down offers of job promotions to follow him to Washington State University. Under these circumstances, we cannot say that the trial court's award of $19,000 was a manifest abuse of discretion. *See In re Marriage of Nicholson,* 17 Wn. App. 110, 561 P.2d 1116 (1977).

Because the $19,000 award is in effect maintenance, the trial court's order requiring Mr. Gillette to pay maintenance in the amount of $1 per year is unnecessary and is reversed. We affirm, however, the portion of that same order which provides that the award shall not terminate upon Mrs. Gillette's remarriage or death, so that her right to receive the full $19,000 may be preserved.

We turn next to the Washburn case. Mrs. Washburn worked full time to support Mr. Washburn while he attended veterinary school. Less than 2 years after Mr. Washburn began practice as a veterinarian, the marriage was dissolved. Nevertheless, the trial judge concluded he was unable to compensate Mrs. Washburn for her contribution to her husband's education, stating:

> I don't believe that I am prepared, nor am I convinced I'd be authorized to make, enter a judgment in favor of one spouse as against the other as compensation, and that's really what we are speaking of, compensation for the broken, lost, destroyed hopes and aspirations that the parties had, either when they got married or during the early years of their marriage.
>
> In this case there is just nothing, no asset to divide. When and if our Supreme Court comes to the point of holding that I can make a division or can in effect make a division of future earning potential, separate and apart from any physical or tangible asset of the parties, maybe we will have a new approach to the dissolution, I do not feel prepared to innovate that type of approach.

Clerk's Papers, at 29–30 (oral ruling of the court).

Under our opinion today, Mrs. Washburn may be entitled to an award as compensation for her contribution to her husband's education. Such compensation may be effected through property division, maintenance, or a com-

bination of both. Although Mrs. Washburn did not appeal from the trial court's denial of maintenance, she did appeal the broader issue of whether she was entitled to a judgment as compensation for her contribution toward the cost of her husband's education. We reverse the Washburn court's conclusion of law that a judgment as compensation for contribution toward the cost of an education is impermissible, and remand for consideration of the compensation due Mrs. Washburn.

Gillette is affirmed. Washburn is reversed in relevant part and remanded.

WILLIAMS, C.J., and STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.

ROSELLINI, J. (dissenting)—This case involves the twin issues of characterization and valuation of a spouse's professional education. The majority declines to address whether the professional degree should be characterized as property, and simply holds that the expectation of future financial benefit derived from supporting a spouse through professional school is a relevant "factor" which must be considered in making a just and equitable division of property and liabilities or a just maintenance award. While I am in general agreement with this holding, I would characterize this interest as a marital asset in the context of increased earning capacity subject to distribution.

The majority's holding on the issue of valuation/recovery is limited to an award to the supporting spouse in the form of reimbursement and/or rehabilitative maintenance or property distribution. I do not agree that such an award is a just and equitable distribution of the assets of the community. I would hold that the value of the educational degree is measured by the increased earning capacity inherent in the particular education and as such is subject to a just and equitable distribution.

I

The dissolution of marriage act, RCW 26.09, provides a

flexible manner of determining what are the assets of the community subject to distribution and includes the respective earning capacities of the parties.

RCW 26.09.080 reads in part:

> In a proceeding for dissolution of the marriage, legal separation, . . . the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

In addition to the four subsections in RCW 26.09.080, which include "[t]he economic circumstances of each spouse at the time the division of property is to become effective," the court should also consider the age, health, education and employment history of the parties and their children, and the future earning prospects of all of them in determining a just and equitable division. *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 408, 433 P.2d 209 (1967); *In re Marriage of Rink,* 18 Wn. App. 549, 551, 571 P.2d 210 (1977). *See also* Comment, *Property Dispositions in Dissolution Proceedings: The Criteria in Washington,* 12 Gonz. L. Rev. 492 (1977); Reike, *The Dissolution Act of 1973: From Status to Contract?,* 49 Wash. L. Rev. 375, 403–05 (1974).

Additionally, RCW 26.09.090 sets forth the factors to be considered by a trial court in determining the propriety of a maintenance award. These factors include the financial resources, health and education of the respective parties, the duration of the marriage and the standard of living established therein.

Support for characterizing the professional education degree as a divisible asset is found in other areas of intan-

gible and speculative property rights considered to be divisible upon dissolution.

The accounting concept of goodwill, like an advanced professional degree, is by nature an asset with an elusive value. However, this court and the lower appellate courts have held that professional goodwill, although intangible and commonly defined as the expectation of continued public patronage, is a factor which has a value and should be included among the assets distributed upon a marriage dissolution. *In re Marriage of Fleege,* 91 Wn.2d 324, 588 P.2d 1136 (1979); *In re Marriage of Kaplan,* 23 Wn. App. 503, 597 P.2d 439 (1979); *In re Marriage of Freedman,* 35 Wn. App. 49, 665 P.2d 902, *review denied,* 100 Wn.2d 1019 (1983); *In re Marriage of Lukens,* 16 Wn. App. 481, 558 P.2d 279 (1976), *review denied,* 88 Wn.2d 1011 (1977). While the goodwill of a particular professional practice may not be marketable and the determination of its value difficult, it is nonetheless an asset of the community because it has a value to the professional spouse. *Fleege,* at 326–27; *Freedman,* at 52. The nonprofessional spouse, having contributed to the building of the professional practice through the provision of services, financial, domestic, or otherwise, has a valuable interest in the goodwill of the professional spouse's practice. The mere fact that goodwill is an amorphous asset and a value cannot be precisely determined is an improper basis for a court's refusal to acknowledge and to consider the existence of the goodwill value when dividing the value of a professional practice between spouses in a marital dissolution proceeding. *Fleege,* at 327–30; *Lukens,* at 484.

Methods of placing a value on professional goodwill vary according to the circumstances of each case. Factors considered when valuing the goodwill of a professional practice include the length of time that the professional spouse has practiced, the comparative success of the spouse's professional practice, the professional spouse's age and health, the past profits of the practice, the fixed resources of the practice, and the physical assets of the practice. *Fleege,* at 326;

*Lukens,* at 484.

The crucial point for our inquiry is not the means by which goodwill is valued, but that a property interest is found in an intangible.

The divisibility of pension and retirement benefits of an employed spouse upon dissolution provides another analogy to support the proposition that the professional degree be considered an asset subject to distribution. Even though pension and retirement benefits normally are not mature, but are future interests, contingent future interests, or even expectancies, the benefits may have a value to both spouses that is capable of division as property. *See Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975); *DeRevere v. DeRevere,* 5 Wn. App. 741, 491 P.2d 249 (1971). *See also* Foster & Freed, *Spousal Rights in Retirement and Pension Benefits,* 16 J. Fam. L. 187 (1977–78).

In a wrongful death or a personal injury action, courts consistently have recognized the need to determine the value of a professional education in order to compensate fully a plaintiff for loss of future income. Damages in a personal injury or wrongful death action are unliquidated; no one fixed mathematical formula is used to decide each case. Rather, each case involves different facts, considerations, and probabilities to which courts cannot attempt to apply a formula. Instead, courts must assume that each situation is unique and recognize that a determination of damages involves some speculation, uncertainty, and arbitrariness. Courts, however, rarely deny a remedy for lost future earning capacity in a personal injury or wrongful death action merely because assessing future earning capacity involves the court in some speculation. We should be equally hesitant to deny relief to a nonstudent spouse who has lost the economic potential of the partial value of the education that she helped to provide. *See* Peck & Hopkins, *Economics and Impaired Earning Capacity in Personal Injury Cases,* 44 Wash. L. Rev. 351 (1969).

A court easily can extend the tort concept of valuation of future earning capacity to a situation in which the support-

ing spouse will lose the economic benefits of the degreed spouse's education upon dissolution of the marriage. The nonstudent spouse will lose the same expectancy as the plaintiff will in the personal injury or wrongful death action. *See* Comment, *The Interest of the Community in a Professional Education,* 10 Cal. W. L. Rev. 590 (1974).

A number of recent cases from sister jurisdictions have held that the supporting spouse is entitled to a distribution of increased earning potential for his or her support of the family while the other spouse obtained an education.

The leading case cited most often for the proposition that a professional degree is not property is the Colorado Supreme Court decision of *Graham v. Graham,* 194 Colo. 429, 574 P.2d 75 (1978), where by a sharply divided vote (4 to 3) that court held that an educational degree was not property capable of division in marriage dissolution proceedings. Nonetheless, the majority in *Graham* did conclude that a spouse's contributions to the acquisition of a professional degree could be considered in matters of alimony for support and maintenance and for property settlement where marital property existed to be divided. It should further be noted that the *Graham* majority, unlike Washington, appears to consider goodwill as not a community asset subject to distribution.

In *In re Marriage of Horstmann,* 263 N.W.2d 885 (Iowa 1978), the Iowa Supreme Court agreed with the pronouncement of the Colorado Supreme Court in *Graham* that a professional degree is not an asset to be considered in the distribution of the marital property. However, the court held that the increased earning potential made possible by the degree was an asset for distribution by the court. The court said, at page 891:

> We hold a trial court in a dissolution case where proper evidence is presented may consider the future earning capacities of both parties and in determining those capacities it may consider the education, skill or talent of both parties. This statement of principle, articulated in *Schantz [v. Schantz,* 163 N.W.2d 398 (Iowa

1968)], applies to the court's determination of an equitable distribution of assets and property and to a determination of whether alimony should be awarded and, if so, to the amount to be awarded. *In re Marriage of Beeh,* 214 N.W.2d 170, 174 (Iowa 1974).

In *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115, 122–23 (Ct. App. 1981), the court held that while an education itself is not properly subject to division in a dissolution of marriage proceeding, it is still a factor to be considered, in addition to others, in arriving at an equitable property division and in determining manner of spousal maintenance and child support:

> We agree with the majority opinion in *Graham* that education is an intangible property right, the value of which, because of its character, cannot properly be characterized as property subject to division between the spouses. In our opinion, the marital property concept simply "does not fit." However, while an *education* itself is not property subject to division, it is still a factor to be considered, in addition to others, in arriving at an equitable property division and in determining matters of spousal maintenance and child support. Thus, while education, along with the potential for greater earning capacity which can accompany it, is doubtless a factor to be considered by the trial judge in determining what distribution of property would be "equitable", and is even more obviously relevant upon the issue of spousal maintenance, it cannot be deemed property as such within the meaning of the Arizona statute.

(Citations omitted.) *Wisner,* at 340–41.

In *In re Marriage of Vanet,* 544 S.W.2d 236 (Mo. Ct. App. 1976), the court held that a professional education and right to practice in a particular field are in the nature of a financial resource and a realistic assessment properly entails consideration of anticipated earning capacity.

Recently the Court of Appeals of Michigan in *Woodworth v. Woodworth,* 126 Mich. App. 258, 260–61, 337 N.W.2d 332, 334 (1983) held that the husband's law degree, which was the end product of a concerted family effort, was marital property subject to distribution upon dissolution of

the marriage:

The facts reveal that plaintiff's law degree was the end product of a concerted family effort. Both parties planned their family life around the effort to attain plaintiff's degree. Toward this end, the family divided the daily tasks encountered in living. While the law degree did not pre–empt all other facets of their lives, it did become the main focus and goal of their activities. Plaintiff left his job in Jonesville and the family relocated to Detroit so that plaintiff could attend law school. In Detroit, defendant sought and obtained full–time employment to support the family.

We conclude, therefore, that plaintiff's law degree was the result of mutual sacrifice and effort by both plaintiff and defendant. While plaintiff studied and attended classes, defendant carried her share of the burden as well as sharing vicariously in the stress of the experience known as the "paper chase".

We believe that fairness dictates that the spouse who did not earn an advanced degree be compensated whenever the advanced degree is the product of such concerted family investment. The degree holder has expended great effort to obtain the degree not only for himself or herself, but also to benefit the family as a whole. The other spouse has shared in this effort and contributed in other ways as well, not merely as a gift to the student spouse nor merely to share individually in the benefits but to help the marital unit as a whole.

Numerous other states have also granted relief to the supporting spouse based in part on increased earning capacity. *See, e.g., Moss v. Moss,* 639 S.W.2d 370 (Ky. Ct. App. 1982); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981); *Hubbard v. Hubbard,* 603 P.2d 747 (Okla. 1979); *O'Brien v. O'Brien,* 114 Misc. 2d 233, 452 N.Y.S.2d 801 (1982); *Daniels v. Daniels,* 20 Ohio Ops. 2d 458, 185 N.E.2d 773 (Ct. App. 1961). *See also* Ind. Code § 31–1–11.5–11(c) (1980), *overruling Wilcox v. Wilcox,* 173 Ind. App. 661, 365 N.E.2d 792 (1977).

Accordingly, I would characterize the professional education as a marital asset in the context of increased earning capacity subject to distribution.

## II

Having determined that the professional degree is an asset of the marital community, we must next determine what method of valuation should be used to compensate the supporting spouse.

I reject the restitution and rehabilitation methods adopted by the majority. Application of these methods can be seen in the New Jersey decisions of *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Hill v. Hill,* 91 N.J. 506, 453 A.2d 537 (1982); *Lynn v. Lynn,* 91 N.J. 510, 453 A.2d 539 (1982).

An assumption that a professional education is solely a monetary purchase underlies the restitution and rehabilitation method of valuation. The court merely measures the supporting spouse's recovery by the amount of contributions to attainment of the degree and loss of earnings to the community while the student spouse is attaining an education, together with opportunities the supporting spouse has forgone.

This measure of recovery undercompensates the supporting spouse by completely ignoring the value of the professional education as a marital asset. Acquiring an education represents more than a mere monetary contribution and forfeiture of opportunity. Limiting the recovery to restitution and rehabilitation (lost opportunity) does not provide the supporting spouse his/her expectation of economic benefit from the career for which the education laid the foundation. The degree was a family investment, rather than a gift or benefit to the degree holder alone. *See Woodworth v. Woodworth,* 126 Mich. App. 258, 337 N.W.2d 332 (1983); Pinnel, *Divorce After Professional School: Education and Future Earning Capacity May Be Marital Property,* 44 Mo. L. Rev. 329, 335 (1979); Loper, *Horstmann v. Horstmann: Present Right To Practice a Profession as Marital Property,* 56 Den. L.J. 677, 689 (1979). A just and equitable distribution of this asset requires valuation of the increased earning capacity inherent in a professional education.

Placing a value on an individual's earning potential is not

compensation for a failed expectation that the professional spouse would realize his/her full economic potential. Rather the valuation is upon the effect of the present right to practice a particular profession on the spouse's earning capacity. *See* Note, *Family Law: Ought a Professional Degree Be Divisible As Property Upon Divorce?*, 22 Wm. & Mary L. Rev. 517 (1981); Comment, *The Interest of the Community in a Professional Education*, 10 Cal. W. L. Rev. 590 (1974).

The Michigan Court of Appeals set forth the relevant factors in valuing a professional degree:

> [T]he length of the marriage after the degree was obtained, the sources and extent of financial support given plaintiff during his years in law school, and the overall division of the parties' marital property. In determining the degree's present value, the trial court should estimate what the person holding the degree is likely to make in that particular job market and subtract from that what he or she would probably have earned without the degree. *Recompense for Financing Spouse's Education: Legal Protection for the Marital Investor in Human Capital,* 28 Kan L Rev 379, 382–384 (1980).

(Footnote omitted.) *Woodworth v. Woodworth,* 126 Mich. App. at 269.

The Supreme Court of Kentucky in *Inman v. Inman,* 648 S.W.2d 847 (Ky. 1982) indicated that if the issue were before the court, the proper formula to be followed in placing a value on an educational degree secured by a spouse, to which the other spouse contributed financially, is to measure the recovery by the amount of money the nonstudent spouse contributed toward living expenses, the amount of money contributed for educational costs, and the potential for increase in future earning capacity made possible by the degree, thus not treating the degree as marital property.

The method for valuation of the increased earning capacity should require a comparison of the student spouse's earning capacity at the time of marriage with that at the time of dissolution or permanent separation. From this value a just and equitable distribution should be made

between the parties. Where a marriage has endured for some time after the degree is obtained, the supporting spouse may already have been benefited from the increased earning capacity and such should be taken into account in making a just and equitable distribution. Because this method of calculation is akin to the method used to ascertain damages for loss of earnings in a tort or wrongful death action, a body of knowledge already exists in the field of economics to make this type determination.

### III

Turning to the cases before the court, I would reverse and remand both decisions for a valuation of the professional education and a just and equitable distribution in accordance with the mandate of RCW 26.09.080. In the event that there is insufficient property to make a just and equitable award to the supporting spouse, the trial court may award a lump sum payment to be distributed by the professional spouse in periodic payments over a reasonable period of time.