IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In the Matter of the Marriage of | No. 31918-1-III |
| SANDRA GUNKEL, | |
| Appellant/Cross-Respondent, | |
| and | UNPUBLISHED OPINION |
| DANIEL GUNKEL, | |
| Respondent/Cross-Appellant. | |

LAWRENCE-BERREY, J. — Sandra Gunkel and Daniel Gunkel were married 34 years. Ms. Gunkel appeals the trial court's rulings in the dissolution proceeding and argues that the trial court abused its discretion by dividing their substantial marital property equally, denying her indefinite monthly maintenance, and denying her an award of attorney fees. We find no abuse of discretion and affirm.

## FACTS

Mr. and Ms. Gunkel were married on July 14, 1979, in Goldendale, Washington. Neither party brought any significant assets into the marriage with the exception of a small savings account by Ms. Gunkel. Ms. Gunkel worked as a bank teller and Mr.

Gunkel as a real estate agent. Ms. Gunkel left her job as a teller in 1981 to care for the first of the couple's three children.

Sometime after the parties' marriage, Mr. Gunkel's father and brother asked Mr. Gunkel to return to work on the family farm. Because real estate sales were decreasing, Mr. Gunkel returned part time at first but eventually began working for the farm full time, receiving a salary from his parents.

Mr. Gunkel's ancestors settled in the Maryhill area of Klickitat County in the early 1900s. Mr. Gunkel grew up in the area, where his parents ran a small family farm with a fruit stand. Mr. Gunkel's parents provided the majority of the labor, and the farm grew slowly. When tillable land became available, Mr. Gunkel's parents would acquire it and plant fruit trees to increase their fruit production. Eventually, they set up a warehouse and packing lines. In 1993, the family incorporated the farm as Gunkel Orchards Inc., listing Mr. Gunkel and his brother as directors. The corporation issued 120 shares of stock to Mr. Gunkel. Mr. Gunkel's brother also received 120 shares, and his parents received 80 shares each. At some point, the elder Gunkels also gifted real property to Mr. and Ms. Gunkel together, including a fruit orchard in Maryhill.

Ms. Gunkel also worked with the family on the farm. Each year from May to October, she performed various tasks, including cleaning fruit, sorting fruit, and cleaning

2

restrooms at the fruit stand. She typically worked 10 to 12 hour days. When needed, she also performed clerical duties for the farm and sent out accounts receivable. Ms. Gunkel would keep track of the hours she worked and provided the information to Mr. Gunkel's mother. Mr. Gunkel's mother would then add an appropriate amount to Mr. Gunkel's check. Ms. Gunkel stopped working in the fruit stand in 1998 when she started a job in the Goldendale School District as a paraeducator. She continued to provide some clerical work for the farm until the farm's bookkeeper assumed those tasks.

Mr. Gunkel's parents intended to maintain the farm and its properties in the Gunkel family. In anticipation of their deaths, Mr. Gunkel's parents created an estate plan that took a number of years to implement and complete. The ultimate goal of their estate plan was to keep the family farm together and intact. After the death of their parents, Mr. Gunkel and his brother received a one-half interest in three pieces of property: Peach Beach, Maryhill Home Place, and bare land in Kitsap County. Mr. Gunkel and his brother also inherited their parents' interests in Gunkel Orchards Inc., an additional 80 shares each.

Part of the estate plan included the "Sugarloaf" land that Mr. Gunkel's parents acquired in the late 1980s. Mr. Gunkel helped develop this property as an employee of the farm. He received a paycheck for his work but did not contribute any money to the

3

acquisition or development of the land. In December 1997 and again in September 1998, Mr. Gunkel's parents gifted portions of the Sugarloaf property to Mr. Gunkel and his brother as their separate estates. Mr. Gunkel, his brother, and his father formed Cherry Hill LLC in May 1998. In January 1999, the brothers contributed their portions of the Sugarloaf property to Cherry Hill LLC. Soon after, Mr. Gunkel's father gifted the remaining portion of the Sugarloaf property to the brothers, who then conveyed it to Cherry Hill LLC. Accordingly, Cherry Hill LLC owned all of the Sugarloaf property, as well as additional property bought with a cash contribution from Mr. Gunkel's father. Cherry Hill LLC strictly holds land that is rented to a third party. Mr. Gunkel did not contribute any separate money to Cherry Hill LLC.

When Mr. Gunkel and Ms. Gunkel first married, they lived a modest lifestyle. They delayed purchases, went without health insurance, and drove cars until they were inoperable, all in an effort to reach their goal of building a successful, sustainable business and to achieve financial security. Their financial position started to improve in 1991 when Mr. Gunkel was elected to the Klickitat County Public Utility District (PUD) board and began receiving income and health insurance from his position. As time went on, Ms. Gunkel was able to spend more on clothes, go to events, purchase gifts, and save money.

In 1999, the parties purchased real property at Dry Creek as a second home. They were able to purchase this home without having to take out a loan. The property consists of over 120 acres and came with a home that the Gunkels remodeled. The parties continued to live in their first home in Goldendale but visited Dry Creek regularly.

The parties separated on March 16, 2010, shortly before Ms. Gunkel filed for dissolution. At the time of trial, their estate was worth over $2 million and the parties had no debt. Ms. Gunkel was 54 and still employed as a paraeducator in the school district. She was earning a gross monthly income of nearly $1,500 from the school district and was receiving $1,578 from Mr. Gunkel as temporary maintenance. Her claimed monthly expenses totaled $2,652. She suffers from high blood pressure and anxiety.

Mr. Gunkel was earning a gross monthly income of approximately $8,700 from a combination of farm wages, PUD wages, and interest and dividend income. Mr. Gunkel moved from the Goldendale home to the Dry Creek home, in part because he needed to live in the district where the house was located to maintain his position with the PUD.

The parties' dissolution trial spanned four days. The parties argued over the characterization and value of the land. Both parties asked for the Dry Creek home. Ms. Gunkel requested lifetime monthly maintenance of $3,500 per month.

5

The court found that the three gifted properties and 80 shares of Gunkel Orchards Inc. were Mr. Gunkel's separate property, and valued those assets at $846,025. The court found that Mr. Gunkel's parents clearly and meticulously laid the groundwork to maintain a family estate and that Mr. Gunkel established that these assets were his separate property.

The court found that Mr. Gunkel's 50 percent interest in Cherry Hill LLC valued at $270,495, his 120 shares of Gunkel Orchards Inc. valued at $600,000, and a number of other parcels of land and business assets were community property. The majority of the land and all the business assets were co-owned equally with Mr. Gunkel's brother, leaving the community a 50 percent share of those assets. The court found that both Mr. Gunkel and Ms. Gunkel contributed equally to the improvement and growth of the business.

In dividing the property, the trial court awarded all of the land, the business assets, and Dry Creek to Mr. Gunkel. The trial court awarded the majority of the couple's bank accounts, retirement accounts, and personal property to Ms. Gunkel. The trial court ordered that the Goldendale residence be sold, as neither party wanted the home. The court divided the value of the home equally.

6

Mr. Gunkel's award of community property totaled $1,915,629, whereas Ms. Gunkel's award of community property totaled $378,885. To equalize the community property award, the court ordered Mr. Gunkel to make an equalizing payment to Ms. Gunkel in the amount of $768,372. The trial court awarded Dry Creek to Mr. Gunkel in part so he could mortgage the property to make the equalizing payment to Ms. Gunkel.

The trial court further found that the marriage was long term. Its primary concern was to leave the parties in roughly the same financial condition and to make a just and equitable distribution of property after considering the relevant factors. In awarding the land to Mr. Gunkel, the trial court recognized Mr. Gunkel's family's history with the property and his efforts in growing the estate. The court also reasoned that Mr. Gunkel should receive the property because he had the attributes to make the business grow. The court found that Mr. Gunkel was an articulate, ambitious, and relatively young and healthy person. The court recognized that Mr. Gunkel and his brother could continue to grow the business. "His history for the last three decades has been one of steady improvement of an ever-increasing upward trajectory in terms of his various enterprises, and I expect that will continue." Report of Proceedings (Feb. 5, 2013) (RP) at 1093.

The court found that Ms. Gunkel did not have the same attributes and options as Mr. Gunkel due to her health problems, limited career prospects, and a lesser degree of

ambition. "She is basically where she's going to be now. . . . So to the extent that the court leaves her—whatever I leave her with today is what she will have for the rest of her life." RP at 1094. The court found that if Ms. Gunkel would be prudent with her cash award, she would be able to live "very, very comfortably the rest of her life." RP at 1093.

The trial court recognized that the division of assets left Mr. Gunkel primarily with the business property and Ms. Gunkel with cash.

> [Mr. Gunkel] ends up being land and business rich in a sense, and in this dissolution action comes out with very little cash. [Ms. Gunkel] gets none of the real property, including the Dry Creek residence, which she wanted. However, my calculations suggest that after the judgment is paid she will be a millionaire. She'll have $1,046,649 in the bank. . . . That gives her the power and control over her life that she's been lacking and desires, and allows her to have an extraordinarily rich set of options if she chooses to use that money wisely.

RP at 1098. The court found that the division left both parties in very good condition financially. The court ordered the first half of the equalizing payment to be made within six months of the dissolution decree and the remainder to be paid in installments over the next few years.

The court ordered Mr. Gunkel to pay $1,578.50 in maintenance until half of the equalizing payment was tendered.[1] The court found that once Ms. Gunkel received half of the payment, she would have a significant bank account and could "begin to process her way out of this." RP at 1099. The court also denied her request for an award of attorney fees, finding that each party had sufficient assets to pay their own attorney fees.

Ms. Gunkel appeals the trial court's distribution of property. She contends that the trial court abused its discretion by not awarding maintenance in the amount of $3,500 per month indefinitely. She also contends that the trial court's property division was not just and equitable. In a conditional cross appeal, Mr. Gunkel contends that if this court finds the property distribution unfair, then he requests review of whether the trial court improperly characterized Cherry Hill LLC as community property.

## ANALYSIS

A.  *Whether the trial court abused its discretion in failing to award Ms. Gunkel a larger portion of the parties' community property, specifically the Dry Creek home*

We review a trial court's property division and award of maintenance after dissolution for a manifest abuse of discretion. *In re Marriage of Washburn*, 101 Wn.2d

---

[1] The record establishes that Mr. Gunkel satisfied the $768,372 judgment on January 22, 2014.

168, 179, 677 P.2d 152 (1984). A trial court is given broad discretion in dividing property because it is in the best position to determine what is fair, just, and equitable. *In re Marriage of Wallace*, 111 Wn. App. 697, 707, 45 P.3d 1131 (2002). "A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or for untenable reasons." *Id.* A decision will be affirmed on appeal unless the spouse challenging the property division can show that no reasonable judge would have reached the same decision. *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).

"[T]rial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality." *Id.* at 809.

We first address Ms. Gunkel's contention that the trial court abused its discretion by not awarding her a larger portion of the community property. Specifically, she requests the Dry Creek home. She contends that the division of property was not just and equitable because Mr. Gunkel received income-producing property as well as his separate property, whereas her award does not provide a source of income. Instead, she maintains

that she will be forced to deplete her funds and cannot improve her situation like her husband can.

The trial court's distribution of property in a dissolution action is guided by statute, which requires it to consider multiple factors in reaching an equitable distribution of property. RCW 26.09.080. These factors include (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. *Id.*

"An equitable division of property does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage." *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996).

Ms. Gunkel fails to show that the trial court's award was an abuse of discretion. The trial court considered the factors and appropriately divided the property. The trial court considered the Gunkels' extensive community property, held mostly in the couple's business operation. The court found that Ms. Gunkel contributed equally to the farm and her participation was the quintessential rationale for community property laws in Washington. Additionally, the court considered the separate property given to Mr. Gunkel by his parents. The court stated, "[T]he court is mindful that while these

11

inheritances and gifts were coming the husband's way, he was at times not just unrelentingly working on the community property, but he was also working on the separate property. And that is factored into my ultimate assessment of the equities of the dissolution distribution." RP at 1091-92. The court noted that the amount that it was ordering Mr. Gunkel to pay Ms. Gunkel was somewhat more than Mr. Gunkel wanted to pay and somewhat less than Ms. Gunkel wanted.

As for the duration of the marriage and the economic circumstances of the parties, the court recognized that the couple's effort to build their fortune was a community effort over three decades of marriage. "By very hard continuous work and intelligent decisions and a strategy of delayed gratification, this extraordinary couple built up a business estate worth in excess of $2 million." RP at 1085-86.

The court awarded the property to Mr. Gunkel because of its connection to his family, especially his brother, and Mr. Gunkel's ability to grow the business. The court compensated for the large property award by ordering Mr. Gunkel to make an equalizing payment to Ms. Gunkel.

Taking the trial court's findings into consideration, we do not find the property distribution unfair or inequitable. Ms. Gunkel received approximately $1.25 million of the couple's $2,489 million estate. While her portion of the property division is mostly

12

cash and not investment property like Mr. Gunkel's portion, this does not make the division unfair. Ms. Gunkel's award allows her to invest her large cash award for an investment return, while still providing for her basic needs. Ms. Gunkel's desired income was $3,120 per month. According to evidence presented at trial, a conservative five percent return from just the equalizing judgment of $700,000 plus her salary as a paraeducator would produce a monthly income of $4,409. In this calculation, the difference between desired income and actual income would leave Ms. Gunkel with a surplus of $1,289. Ms. Gunkel's surplus allows her to grow her investment or afford a better lifestyle. Additionally, this calculation does not account for the approximately $278,000 in bank accounts or the retirement accounts that Ms. Gunkel received as part of the property distribution that she will have at her disposal.

In contrast, Mr. Gunkel's award consisted of primarily land and business assets. Mr. Gunkel received relatively little cash but owed a large payment to Ms. Gunkel. The court used its discretion to award the Dry Creek home to Mr. Gunkel to provide collateral for the payment. While Mr. Gunkel's income of $8,700 was higher than Ms. Gunkel's income, he was forced to mortgage the Dry Creek property to pay Ms. Gunkel's equalizing lien. He estimated his monthly household expenses with the mortgage to be about $5,470 and deductions from his income to be $2,000, giving him a monthly surplus

13

of about $1,200. This amount is slightly less than Ms. Gunkel's surplus. While Mr.

Gunkel will be able to grow his business and potentially receive a higher income, he will

also have to take risks and put in the necessary work to accomplish this task. The trial

court's property division was well within its discretion. We do not find the division to be

unjust or inequitable.

B. *Whether the trial court abused its discretion by not awarding indefinite monthly maintenance of $3,500 to Ms. Gunkel*

Ms. Gunkel contends that the trial court abused its discretion by not awarding her

lifetime maintenance. She maintains that maintenance was needed to place the parties in

equal financial positions. Underlying this contention is Ms. Gunkel's belief that the

property distribution was not equitable because it awarded all of the income-producing

assets to Mr. Gunkel, which gives him the ability to create wealth.

In a dissolution proceeding, the court may grant maintenance to either spouse.

RCW 26.09.090 provides:

> The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:
> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

14

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage or domestic partnership;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

A trial court does not have to find all of the factors; nor is this list exclusive when deciding on an award of maintenance. *Washburn*, 101 Wn.2d at 179. "The purpose of spousal maintenance is to support a spouse, typically the wife, until she is able to earn her own living or otherwise becomes self-supporting." *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).

Lifetime maintenance is generally disfavored. *Cleaver v. Cleaver*, 10 Wn. App. 14, 20, 516 P.2d 508 (1973). Maintenance is not a matter of right, and courts may not grant a perpetual lien on the future earnings of a maintenance obligor. *In re Marriage of Morgan*, 59 Wn.2d 639, 642, 369 P.2d 516 (1962). However, "[w]here the assets of the parties are insufficient to permit compensation to be effected entirely through property division, a supplemental award of maintenance is appropriate." *Washburn*, 101 Wn.2d at 178.

The trial court did not abuse its discretion when it denied Ms. Gunkel's request for lifetime maintenance in the amount of $3,500. The trial court found that maintenance was necessary only until Ms. Gunkel received one-half of the equalizing payment. The court found that once one-half of the equalizing payment was received by Ms. Gunkel, she would be in a secure financial position. We find no error with the trial court's decision.

The trial court considered the above factors in its oral findings. The trial court found that the award of over one million dollars would allow Ms. Gunkel to support herself independently. The court acknowledged that Ms. Gunkel would likely not attend further schooling or better her position, but found that the amount of the award would allow her to live very comfortably, especially if she was responsible with her award. The court also recognized that the marriage was lengthy and that Ms. Gunkel suffered from some health issues. Still, the court found that the amount of the award placed both parties in fairly equal positions.

Ms. Gunkel contends that her situation is similar to *In re Marriage of Morrow*, 53 Wn. App. 579, 587, 770 P.2d 197 (1989), where the parties were married for 23 years, during which time Ms. Morrow sacrificed her earning potential by becoming a homemaker. The appeals court determined that maintenance was appropriate to

compensate for the inequitable distribution of property due to Mr. Morrow's actions. *Id.* at 588-89. The court found that Mr. Morrow transferred his community assets to third parties before the dissolution, which put Mr. Morrow in a very advantageous position. *Id.* at 586. The court also reviewed the factors of RCW 26.09.090 and found that the maintenance amount and length were warranted because Ms. Morrow was not likely to achieve the financial independence enjoyed by Mr. Morrow or retain the high standard of living, she sacrificed her earning potential by becoming a homemaker during the 23-year marriage, and her physical disability warranted a higher amount than would ordinarily be appropriate. *Id.* at 587-88.

*Morrow* is distinguishable from Ms. Gunkel's situation because the property distribution here is just and equitable. There is no evidence that Mr. Gunkel concealed property from the trial court. Instead, Ms. Gunkel received roughly one-half of the couple's community property from a two million dollar estate. The award compensates Ms. Gunkel for the time and effort she contributed to the marriage. As determined above, the trial court's division provides Ms. Gunkel with the means to live a comfortable life.

A maintenance award is not needed to compensate for an inequitable property distribution or to reward Ms. Gunkel for her efforts in the marriage. Ms. Gunkel received one-half of the parties' accumulated wealth, which left her with a large amount of cash.

If managed correctly, this amount is sufficient to allow her to live a very comfortable life compared to her standard of living during her marriage. The trial court did not abuse its discretion by failing to award indefinite maintenance in the amount of $3,500 to Ms. Gunkel.

Given our conclusion that the trial court did not abuse its discretion in its division of property and temporary award of maintenance, we need not address Mr. Gunkel's conditional cross appeal, which concerns the characterization of his 50 percent interest in Cherry Hill LLC as community property.

C.      *Whether the trial court abused its discretion by denying Ms. Gunkel's request for an award of attorney fees*

We review a trial court's decision to deny or award attorney fees in a dissolution action for an abuse of discretion. *In re Marriage of Stenshoel*, 72 Wn. App. 800, 814, 866 P.2d 635 (1993). "In making an award, the trial court 'must balance the needs of the spouse requesting [attorney fees] with the ability of the other spouse to pay.'" *In re Marriage of Tower*, 55 Wn. App. 697, 705, 863 P.2d 863 (1989) (quoting *Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984)).

The trial court did not abuse its discretion in declining to award attorney fees. The court considered the request and found that both parties had sufficient funds to pay their own attorney fees. Based on the amount of property distributed to each party and the

18

No. 31918-1-III
*In re Marriage of Gunkel*

ability of each party to live comfortably after the division, we find no abuse of discretion

by the trial court. For the same reason, we decline Ms. Gunkel's request for attorney fees

on appeal.

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

19