[No. 25126. *En Banc*. October 26, 1934.]

ADA BUNGAY, *Respondent*, v. REES BUNGAY, *Appellant*.[1]

*Roy A. Redfield,* for appellant.
*Robertson & Smith,* for respondent.

TOLMAN, J.—This is an action by the respondent wife for separate maintenance. The husband cross-complained, and sought an absolute divorce on the ground of cruelty. After a trial on the merits, the prayer for divorce was denied, and separate maintenance was granted to the wife, the amount and details of which will appear in the discussion which follows. The husband has appealed.

The parties had been married for some fourteen years. There were three minor children living, aged

[1] Reported in 36 P. (2d) 1058.

twelve, ten and seven years. The youngest had been left crippled and somewhat deficient mentally by disease and as the result of a severe accidental injury.

Neither party had any property except a home which the trial court found to be of the value of six thousand dollars, subject to a mortgage of three thousand dollars then in default, and household furniture. The husband was earning a salary of two hundred and fifty dollars per month, fifty dollars of which was pledged to secure the payment of community indebtedness theretofore contracted.

The appellant very strenuously attacks the decree, both on the ground of its denial of an absolute divorce and also because it places financial burdens upon him which are wholly beyond his present capacity to carry.

The evidence upon the divorce issue is voluminous and involved. Much of it is in sharp conflict, and it is manifestly impossible to make a full and fair statement of the facts in this opinion. A partial statement might give the erroneous impression that we had overlooked or disregarded important facts, and therefore we shall not discuss particular incidents or events.

The whole history of this marital enterprise is revealed in the record from conflicting viewpoints. Whether the truth be as contended by the wife or whether the version of the husband be accepted, in either event the marriage has proved to be a failure; and the record reveals no basis for a hope that any enduring structure can be built upon the wreck. It is probable that, making due allowance for human frailties and the natural impulse for self-justification, the truth lies somewhere between the two extremes, but that does not better the situation.

The trial court seemed to be of the opinion that much of what happened in the past had been forgotten or could be forgiven, but in this respect we think he

was unduly optimistic. Such things as here occurred, although apparently relegated to the silent past, usually leave hideous scars, or open and festering wounds, and are likely to be torn open and aggravated by subsequent events. What has admittedly occurred since is sufficient, in our opinion, to warrant conclusions which the trial court seems to have rejected.

Taking the whole record from the beginning, and bearing in mind that which the trial court hoped had been forgotten, even though some of the particular events be softened by accepting the wife's version of them, still we cannot hold her free from blame. The whole record, so considered, shows rather convincingly that the wife possessed a nature which harbored resentment, and that her disposition was to inflict punishment upon her husband for his real or fancied shortcomings. Accordingly, by her course of conduct and in her punitive efforts, she was quite successful in creating statutory cause for divorce under subdivision 5 of Rem. Rev. Stat., § 982 [P. C. § 7501].

Where, as here, the marriage has been completely wrecked and statutory ground for divorce exists, it seems to us inexpedient upon every ground to hold the parties bound until death releases the bond. Nothing but continued warfare can be expected from such a course, and such a warfare can bring no good to the parties, to the innocent children, or to the public.

True, if the wife were the injured party, and the only injured party, no court should compel her to accept a divorce against her will, but as we have already indicated, we cannot see the wife as standing in that position. We do not particularly disagree with any fact found by the trial court, but from the entire record we draw inferences and conclusions which call for a different result; and therefore, on this feature of the

case, we conclude that it was error to deny the prayer of the cross-complaint for a divorce.

The interlocutory decree must, of course, determine the financial issues, and since we do not entirely agree with the trial court's provisions for separate maintenance, it seems proper to discuss, in a general way, these matters.

The trial court was undoubtedly right in giving respondent the custody of the children with reasonable visiting privileges to the father, and also in giving to her the household furniture and effects; though some minor articles, suitable only for the appellant's use and to which he has a special attachment, might well be awarded to him.

The equity in the home should also be vested in the wife, but subject to a right reserved to the appellant to refinance the mortgage so as to cure defaults, pay back taxes, and lessen the monthly payments if that be possible. And also, since the home is now far beyond the means of these parties and, perhaps, beyond what the wife and children actually need for a home, the appellant should be given a reasonable time in which to effect a sale or an exchange to the end that the equity be converted into a simple and modest home, debt free, or as nearly so as possible.

In the decree appealed from, it is provided:

"It Is Further Ordered, Adjudged and Decreed that the defendant shall pay to the plaintiff through the registry of the court, the sum of $125 per month for her support and the support and maintenance of said minor children, until the further order of the court, and that the defendant shall pay the monthly mortgage installments and taxes on said family home, and shall furnish to the plaintiff for use in said family home light, fuel and water, until the further order of the court."

Since, as we have seen, the husband has only two hundred dollars per month income, above that already assigned in good faith to secure the payment of community indebtedness, these provisions are impossible of performance unless someone comes to the appellant's aid. It is suggested that appellant's father is well-to-do, and perhaps it was expected that he would assume the burden thus created, but we know of no rule of law which, under circumstances such as here exist, makes a father liable for the indebtedness of an adult son, and the law can look only to appellant's earning power as the measure of his duty to provide.

That being so, and since, in order to continue to earn his salary, appellant himself must be fed, clothed and lodged, at least sufficiently so that his efficiency will not be impaired, his necessities must be considered as well as the necessities of respondent and the children. In addition to these necessities, he is now carrying life insurance for the benefit of his children which he should not be required to forfeit. We think, in the interest of the respondent and the children, that the appellant should be permitted to retain from his salary seventy-five dollars per month, and from this amount, in addition to his own living expenses, he may be required to keep up the premiums upon the life insurance mentioned so that it may remain in force for the benefit of the children.

This leaves one hundred and twenty-five dollars per month, which is all that is available for the support of the respondent and the children and for the protection of the equity in the home. The trial court should use a sound discretion in determining what part of this sum should be allowed for living expenses and what part, if any, should be used to protect the equity in the home.

The trial court also should retain jurisdiction so

that, with changed conditions, the respondent and the children may enjoy their proper share of any increased income.

The judgment appealed from is reversed, with directions to proceed as herein indicated.

BEALS, C. J., MILLARD, STEINERT, BLAKE, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—What we have always said as to the trial judge being in better position to determine the credibility of witnesses, pass upon conflicting facts and decide accordingly, should apply especially to hotly contested divorce cases. It cannot be said that the evidence preponderates to the contrary of the decision of the trial court. On the record here, in my opinion, the judgment denying the divorce should be affirmed, and the amounts allowed for separate maintenance modified according to the majority opinion.

Therefore, I dissent.

MITCHELL and GERAGHTY, JJ., concur with HOLCOMB, J.