[No. 34923.   Department Two.   June 4, 1959.]

LILLIAN W. SHORT, *Appellant*, v. RUSSELL M. SHORT, *Respondent*.[1]

[1]Reported in 340 P. (2d) 168.

*Savage & Nuxoll*, for appellant.

*Sanger & Irwin* and *John A. Denoo*, for respondent.

ROSELLINI, J.—The parties to this action were married in 1917, and were separated in 1953, at which time they executed a property agreement, dividing their property more or less equally, and the agreement was fully performed. Provision was made for the support of a minor daughter who was then in high school. The agreement further provided that the defendant would support a daughter who was in college at that time, on a purely voluntary basis. The share of each of the parties was valued, in the agreement, at $31,516.07. No provision was made for support payments to the plaintiff, and the agreement was concluded with the following statement:

"This is a complete and full property settlement of the rights of the parties, and all property hereafter accumulated by each of said parties from this date is to be the sole, separate, and individual property of the person accumulating the same."

This action for separate maintenance was begun in June, 1957. The defendant cross-complained for divorce. Sometime after the hearing, the court rendered a memorandum decision, upon which findings of fact and conclusions of law were entered in favor of the defendant and a judgment was rendered dismissing the complaint and granting the prayer of the cross-complaint.

We are asked to reverse this decision, the plaintiff contending that neither the findings nor the evidence establish grounds for divorce. The court found that the plaintiff had, during the marriage of the parties, subjected the defendant to cruel and inhuman treatment,

". . . in that the plaintiff constantly nagged the defendant, spending exorbitant sums of money and threatened many times to spend all of the savings of the plaintiff and defendant, and did without the consent of the defendant cash in United States Savings Bonds of the parties, and did

spend $900.00 of the reserve account which the defendant had in the savings account in Pullman, Washington; that in the fall of 1953, the plaintiff without the consent of the defendant secured the title to the 1948 Studebaker automobile of the parties and traded the same upon a new Pontiac automobile taking title to the same in her own name without the consent or knowledge of the defendant causing the defendant great embarrassment and financial loss; that the defendant had severe heart trouble during the year 1953 and the plaintiff refused to recognize this, would keep the defendant awake at night, and would molest him when he attempted to rest; that the plaintiff refused to account to the defendant for the money of the plaintiff and defendant which she was spending; that the plaintiff requested that the defendant give her half of the property so she could spend the money when she wanted to."

We have carefully reviewed the evidence in this case and find the plaintiff to be correct in that certain details of this finding are not supported by the evidence.[2] Contrary to the contention of the plaintiff, there is ample evidence that her conduct toward the defendant rendered his life burdensome, and affected his mind so much so that at one time he moved into a small cottage next door to the parties' home and remained there for several weeks and eventually left home permanently. There was no evidence that the plaintiff objected to his final departure, and she does not suggest that she wishes to live with him now. At this point, she is simply interested in obtaining additional support.

There is, as the plaintiff suggests, considerable evidence that the defendant was not without fault. He was, according to the testimony of the plaintiff and her witnesses, moody and uncommunicative, but we cannot say, upon the record, that the court was without justification in conclud-

[2] But there was ample evidence which, if believed by the court would support the finding that she appropriated property of the parties without the knowledge or consent of the defendant and that she kept him awake when he was ill and did not minister to his needs. There was also evidence that the defendant worked long hours on the farm, where the parties lived, even when he was suffering from a heart ailment, and that the plaintiff neglected her duties as a housewife and deprived the defendant of his needed rest by making and tolerating loud noises in the house after he had gone to bed.

ing that his conduct was provoked by that of the plaintiff, and that greater equities existed in his behalf.

The welfare of minor children is not involved in this action, and it is not a case in which the defendant abandoned the plaintiff without cause and without providing for her support.

To be entitled to separate maintenance, a wife must show that her husband abandoned her without cause or that she was compelled to live apart from him because of conduct on his part which, in law, constituted abandonment, and that the husband, having the ability to support her, neglected or refused to do so. *Roberts v. Roberts*, 51 Wn. (2d) 499, 319 P. (2d) 545. Furthermore, as we said in *Cohn v. Cohn*, 4 Wn. (2d) 322, 103 P. (2d) 366, a decree of separate maintenance anticipates that a future reconciliation may be brought about.

The facts of this case bring it within the doctrine of *Bungay v. Bungay*, 179 Wash. 219, 36 P. (2d) 1058, wherein it was said:

"Where, as here, the marriage has been completely wrecked and statutory ground for divorce exists, it seems to us inexpedient upon every ground to hold the parties bound until death releases the bond. Nothing but continued warfare can be expected from such a course, and such a warfare can bring no good to the parties, . . . or to the public."

If there is a distinction between that case and this, it is that the parties in that case were engaged in active warfare, whereas in this they have maintained an armed truce, with a no man's land between them. In either case, there is nothing to be gained by a continuation of the legal relationship. See, also, *Fruehauf v. Fruehauf*, 25 Wn. (2d) 232, 170 P. (2d) 309, and *Flagg v. Flagg*, 192 Wash. 679, 74 P. (2d) 189, in both of which the statutory grounds were weak and both parties were at fault, but the prospects for reconciliation were hopeless.

We are aware of our rule that neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness con-

stitutes a ground for divorce. *Best v. Best*, 48 Wn. (2d) 252, 292 P. (2d) 1061. The evidence in this case, however, shows something more than these complaints—a course of conduct on the part of one spouse which exhibited little consideration for the other's needs, both physical and mental, and which resulted in a deteriorating emotional condition of the other that eventually drove him to leave the home of the parties to find peace and rest. We are satisfied that the evidence was sufficient to support the judgment.

The plaintiff also asks the court to disregard the property settlement agreement, which, by its terms, was a complete and full settlement of the property rights of the parties and provided that all property thereafter accumulated by each of the parties should be his or her sole, separate, and individual property. She does not suggest that the agreement was unfair, but declares her need of support money, and relies upon the statement found in 27 Am. Jur. 20, § 413:

". . . it seems that a separation agreement which contains no provision for the support of the wife is not a bar to the wife's subsequent suit for separate maintenance."

██ Assuming this to be the rule, we cannot read the provision of the agreement quoted above to mean anything less than an agreement that neither party would make any further claim upon the other. The intentions of spouses to property settlement agreements, considered in light of all surrounding circumstances, will be given effect by courts if such intentions can be definitely ascertained. *Bryant v. Stablein*, 28 Wn. (2d) 739, 184 P. (2d) 45. The intention of the parties determines whether a property settlement agreement is to be considered as a final adjudication of their rights and property. *Burch v. Rice*, 37 Wn. (2d) 185, 222 P. (2d) 847.

█ It cannot be said that the parties to this agreement did not contract with reference to support payments, inasmuch as provision was made for the support of the minor children. The parties had the subject in mind, but nevertheless agreed that a division of the property then owned

by them would result in adequate provision for the plaintiff, and she was willing, in consideration of this division, to forego further support. The agreement was fully performed on the part of the defendant. There is no evidence of overreaching on his part, and in fact, the property which he received as his half proved to be less valuable than that allocated to the plaintiff.

While it is true that the evidence shows the plaintiff's present income to be less than adequate for her needs, it also shows that she has certain skills which can be used to augment that income. Both parties are past middle age and both have physical disabilities. Justifiably, the trial court found in the evidence no compelling reason to disregard the clearly expressed and fully executed agreement which they had entered into at a time when their present condition could reasonably be foreseen. Its decision giving effect to that agreement was therefore correct.

The judgment is affirmed.

WEAVER, C. J., MALLERY, HILL, and FOSTER, JJ., concur.