# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EDMUND MICHAEL VONALLMEN, | ) | |
| | ) | No. 74726-6-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JACQUELYNE LERAY VONALLMEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: April 17, 2017 |

SPEARMAN, J. — When a long term marriage ends in divorce, the trial court has broad discretion to distribute property and award maintenance so as to leave the parties in roughly equal financial positions. Edmund VonAllmen appeals the trial court's distribution of property and award of maintenance, asserting that these are based on erroneous calculations and leave him at a financial disadvantage. But because he fails to demonstrate a manifest abuse of discretion, we affirm.

## FACTS

Edmund and Jacquelyne ("Jacki") VonAllmen began living together in 1989 and married in 1992. They had two children together. Edmund filed to dissolve the marriage in November 2014.[1]

---

[1] We refer to the parties by their first names to avoid confusion and intend no disrespect.

In the early years of the relationship, Jacki was employed doing data entry and other office jobs. She stopped working outside the home in 2000. Edmund and Jacki agree that, without retraining, Jacki has an earning capacity of about $31,000 per year.

Edmund has worked at Microsoft since 1991. In addition to his salary, Edmund has received a bonus each year. Edmund also receives stock awarded as a retention incentive. Stock awards are contingent upon the employee's continued service and only vest after the employee remains with the company a designated period of time. Because of his long employment with the company, Edmund has stock awards that vest each year that he remains at Microsoft. Edmund's practice has been to sell the stock awards shortly after they vest. During the marriage, Edmund and Jacki used Edmund's salary, bonus, and stock awards for family expenses and investments. In 2014, Edmund received a salary of about $212,000. His total taxable earnings were over $513,000.

At trial, property distribution and spousal maintenance were before the court. Edmund and Jacki agreed that they had assets totaling over $6 million, most in the form of investments. Edmund proposed an equal distribution of property and maintenance of $5000 per month for nine years, an amount based on his salary of about $215,000. He argued that, because neither the bonus nor stock awards were guaranteed, these should not be calculated as part of his income or property until received. He also argued that his position at Microsoft was very stressful, the position could end at any time, and he had long wanted to

leave Microsoft to take a less stressful, and lower paying, job. Edmund proposed that, for three years, he would award Jacki 50 percent of his bonus when received and 50 percent of his stock awards granted during the marriage when these vested.

Jacki proposed a disproportionate distribution of property in her favor and an award of maintenance for twelve years, until Edmund reached retirement at 65 years of age. Based on their standard of living during the marriage, Jacki sought maintenance starting at $15,000 per month and decreasing over time to $10,000 per month. Jacki acknowledged that Edmund's bonus and stock awards were not guaranteed, but she argued that Edmund's total compensation per year, including bonus and stock awards, had been largely consistent over time. Jacki objected to Edmund's proposal to divide bonus and stock awards when received, arguing that this would allow him unilateral control over the bulk of his earnings.

The trial court found that the parties had a long term marriage and virtually all of their assets and debts were acquired during the marriage. CP at 64. The court awarded Jacki a 60 percent share of community property, 50 percent of stock awards granted during the marriage, and maintenance for nine years. The court detailed the property distribution in a spreadsheet titled "Exhibit A." Clerk's Papers (CP) at 69-70.

Edmund appeals.

## DISCUSSION

In a dissolution action, the trial court must make a "just and equitable" distribution of the parties' assets and liabilities. RCW 26.09.080. Both community and separate property is before the court. Id. In a long term marriage, the court's objective is to place the parties' in roughly equal financial positions for the rest of their lives. In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007). Similarly, in awarding maintenance, the court must make a just award to equalize the parties' standard of living for an appropriate period of time. Washburn v. Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984) (citing RCW 26.09.090(1)(c)(d)). We will not overturn the trial court's distribution of property or award of maintenance unless the challenging party demonstrates that the trial court manifestly abused its discretion. Id.

Exhibit A

Edmund challenges the specific distribution of assets listed in Exhibit A. He does not appeal the court's order dividing community property 60 percent to Jacki, but he argues that Exhibit A contains numerous errors that result in a deviation from the court's ordered ratio. He argues that these errors require remand.

Exhibit A details the parties' assets and liabilities and distributes them between Jacki and Edmund. The exhibit states that Jacki's award amounts to 59.86 percent of the total community property and Edmund's award amounts to 39.26 percent. The court's written order states that the values listed in Exhibit A

4

"represent ratios, and may not reflect actual values on the date assets and debts are divided." CP at 68. The order provides that "[t]o the extent there is a discrepancy between specific findings and allocations made in the paragraphs herein and on Exhibit A, the written allocation made herein prevails." Id.

Edmund's first argument concerns an award of stock that vested after he and Jacki separated. Edmund sold the stock for net proceeds of $198,051, an amount listed as item 12 in Exhibit A. Edmund argues that Exhibit A erroneously characterizes this amount as community, rather than separate, property.

The trial court awarded Jacki a 50 percent share of stock awards granted during the marriage. Exhibit A accordingly distributes the $198,051 to Jacki and Edmund in equal shares. However, the court adopted the characterization of the stock awards propounded by Edmund. Under this characterization, the stock award is Edmund's separate property. Exhibit A lists the award as community property.

In a motion for reconsideration, Edmund asked the court to clarify whether it intended to distribute 50 percent of stock awarded during the marriage to Jacki, despite finding that this stock was Edmund's separate property. Edmund also argued that, because the court ordered a disproportionate distribution of community property, it should not award Jacki a share of Edmund's separate property.

In response, the court clarified that unvested stock earned during the marriage is characterized as separate or community based on when it vests. The

5

court stated, however, that both community and separate property is before the court for distribution. The court repeated its order awarding 50 percent of the stock granted during the marriage to Jacki. The court also ordered Exhibit A amended to the extent it did not accurately reflect the award of Edmund's separate property.

On appeal, Edmund asserts that Exhibit A erroneously lists $198,051 as community property. But as the trial court ordered Exhibit A amended to reflect that the stock award was separate property, we reject Edmund's argument.

Edmund's next argument concerns a retirement account referred to as the Fidelity 401(k). He contends that the trial court erroneously characterized this account as 100 percent community property when a portion of the account was his separate property.

At trial, Edmund testified that the Fidelity 401(k) was valued at about $1,160,000. He stated that $17,114 of that amount, or about 1.47 percent, was his separate property. In its order, the court stated that it was awarding Jacki 60 percent of the community property overall and 58 percent of the 401(k). Exhibit A lists the entire 401(k) as community property and awards 58 percent of it to Jacki.

The trial court considered the character of the 401(k) and distributed it accordingly. The award is within the court's discretion. If there was any error in failing to reflect, on Exhibit A, that 1.47 percent of the account was Edmund's separate property, it did not amount to an abuse of discretion. See In re Marriage of Gillespie, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997) ("[M]ischaracterization

of property is not grounds for setting aside a trial court's property distribution if it is fair and equitable.") (citing In re Marriage of Shannon, 55 Wn. App. 137, 140 777 P.2d 8 (1989)).

Next, Edmund contends that Exhibit A erroneously debits a home equity line of credit (HELOC) twice. He asserts that this error amounts to an abuse of discretion.

The trial court found that the family home was community property valued at about $1,040,000. The court found that a HELOC of approximately $100,000 was community debt to be paid equally by Edmund and Jacki. Exhibit A lists the home as a community asset with a gross value of $1,040,000 and a net value, less the HELOC, of about $940,000. The exhibit shows that this asset is awarded to Jacki as part of her 60 percent share of community property. The exhibit deducts the HELOC from the couple's total community assets but does not reflect the court's order that each party is liable for 50 percent of the HELOC.

Edmund contends that Exhibit A artificially lowers the value of the home awarded to Jacki by deducting the HELOC both from the home's value and from the couple's community property. Jacki concedes that Exhibit A does not subtract half of the HELOC debt from either party's award. She argues, however, that any effect on the couple's total community property is slight and does not warrant remand, as the award of community property remains close to the court's stated 60/40 distribution and within the court's discretion. She also notes that Edmund failed to raise this issue below.

We agree with Jacki. Exhibit A fails to reflect the trial court's order that each party was responsible for 50 percent of the HELOC, but the discrepancy is minor. The error does not amount to a manifest abuse of discretion.

Next, Edmund argues that Exhibit A fails to deduct a car loan of about $50,000 from the couple's total community property. He further contends that Exhibit A lists erroneous figures for the couple's total and net community assets. Jacki agrees that Exhibit A erroneously fails to deduct the car loan from the total assets and thus incorrectly sums the couple's community property. She argues that the error is minor and benefits Edmund.

Exhibit A lists the car loan and includes the amount in the couple's total liabilities. But the exhibit fails to deduct the car loan from gross assets to arrive at the couple's correct net assets. The exhibit lists net assets as $6,330,972 rather than $6,280,970. The parties agree that, after subtracting each party's separate property, the total community property amounts to $5,686,485 rather than the listed $5,736,487.[2]

We agree with Jacki that this error is minor and benefits Edmund. Had the trial court correctly subtracted the car loan from the couple's community property and left all awards the same, Edmund would have received a slightly higher proportion of the community property. The error is minimal and does not constitute an abuse of discretion.

---

[2] We note that, per the court's statement that it amended Exhibit A to reflect that stock awards in the amount of $198,051 were Edmund's separate property to be distributed equally between the parties, this amount must be subtracted from the total community assets and reflected in each party's separate assets.

Finally, Edmund contends that the many errors in Exhibit A significantly affected the court's division of property and caused it to deviate from its stated intent of distributing community property in a 60/40 ratio. He asserts that the errors in Exhibit A amount to over a quarter million dollars and require remand.

Edmund is mistaken. In arriving at his figure of a quarter million dollars, he relies largely on the stock award valued at $198,051. But the court stated that Exhibit A was amended to reflect that this amount was separate property to be divided equally between the parties. The other errors that Edmund points to are minimal and do not result in a meaningful deviation from the court's intent to distribute community property in a 60/40 ratio.

Maintenance

Edmund next asserts several challenges to the award of maintenance. In awarding maintenance, the court must make a just award to equalize the parties' standard of living for an appropriate period of time. Washburn, 101 Wn.2d at 179 (citing RCW 26.09.090(1)(c)(d)). In determining a just award, the court must consider "all relevant factors." RCW 26.09.090(1). The ability to meet financial obligations is one relevant factor. RCW 26.09.090(1)(f).

"The trial court is in the best position to assess the assets and liabilities of the parties and determine what is 'fair, just and equitable under all the circumstances.'" Brewer v. Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)). We review the trial court's findings of fact for substantial evidence, viewing the record

in the light most favorable to the party in whose favor the findings are entered. In re Gillespie, 89 Wn. App.at 404.

In this case, the trial court found that maintenance was warranted to account for the length of the marriage, the disparate earning ability of the parties, and the time necessary for Jacki to maintain her own financial stability. The court found that Edmund's average annual income, including salary and bonus, was $262,235 and used this amount in calculating child support and spousal maintenance. The court ordered Edmund to pay maintenance for nine years: $8,500 per month for 48 months, followed by $6,500 per month for 36 months, followed by $5,000 per month for 24 months. CP at 68.

Edmund argues that the trial court failed to consider his ability to pay as required by statute. However, the court expressly stated that, in determining the amount of maintenance, it considered a number of factors, including the financial circumstances of both parties and Edmund's "ability to meet his financial obligations after dissolution." CP at 68. The court used Edmund's average income including salary and bonus in considering his ability to pay. The trial court did not fail to consider this statutory factor.

Nevertheless, Edmund asserts that he is unable to pay the amount of maintenance ordered while also meeting his child support obligations and his own expenses. He contends that the trial court erred in basing maintenance on his average income including his bonus. He asserts that, if Microsoft chooses to award him any bonus, it does not do so until September and he thus must live on

10

his salary alone for most of the year. According to Edmund, the maintenance order creates a $2,693 monthly shortfall in his living expenses and is therefore impossible to meet.

Edmund relies on Bungay v. Bungay, 179 Wash. 219, 36 P.2d 1058 (1934). In that case, a husband was ordered to pay maintenance and child support of $125 per month as well as the mortgage and taxes on the family home. Id. at 223. But because the husband earned $200 per month and had no other means of income, the appellate court described this order as "impossible of performance." Id. The Bungay court stated that "the law can look only to appellant's earning power as the measure of his duty to provide." Id.

Bungay is of no help to Edmund. Unlike the husband in Bungay, Edmund's salary is not his only means of income. Edmund's compensation has three sources: salary, bonus, and stock grants. The trial court properly considered Edmund's earning power, including bonus income, in calculating maintenance. There was no abuse of discretion.

Next, Edmund contends that the award of maintenance is "impermissible double dipping" because he must deplete his savings to meet maintenance payments. Brief of Appellant at 34. He relies on In re Marriage of Burnett, 63 Wn. App. 385, 818 P.2d 1382 (1991). In that case, this court reversed an award of maintenance that required the husband to deplete business inventory in which the wife already owned a 50 percent share. Id. at 388. The court held that the maintenance award was an attempt to distribute the wife's share of the business.

Id. But because the wife had already been awarded one-half the value of the business, the maintenance order distributed the same property twice. Id.

Edmund argues that, as in Burnett, the maintenance order in this case requires him to deplete assets that the court already distributed as property. Edmund is mistaken. The maintenance order in this case is based on Edmund's annual income. It is not an attempt to distribute Jacki's share of community property and does not entail distributing the same property twice.

Edmund next contends that the court's maintenance order deprives him of due process. His argument is based on the uncertain nature of his annual bonus. Edmund argues that, to meet the maintenance order, he must advance to Jacki bonus income that he has not yet received. He asserts that, if he does not receive a bonus, he will have no means of recovering the money he has advanced. Id. He notes that, while he may petition to modify the maintenance order, modification will apply only to payments subsequent to that petition.

Edmund relies on State ex rel. Lloyd v. Superior Court of King County, 55 Wash. 347, 104 P. 771 (1909). His reliance is misplaced. The issue in Lloyd was an award of alimony when it was disputed whether a marriage existed. Id. at 351. The court held that awarding alimony without determining whether a marriage existed violated due process because it could "subject the [payor] to an invasion of property rights for which he might be without redress. . . ." Id. Because, in this case, there is no dispute that the parties were married or that the trial court had authority to award maintenance, Lloyd is inapposite.

Edmund's due process argument is without merit. The award of maintenance is based on Edmund's average annual income derived from his salary and bonus. If there is a substantial change to this annual income, Edmund may petition for modification. Edmund points to no authority for the proposition that the inability to apply modification retroactively violates due process.

Next, Edmund argues that the award of maintenance is unnecessary because Jacki's needs are adequately met through the disproportionate distribution of property. But, in awarding maintenance, the court aims to make a just award that equalizes the parties' standard of living for an appropriate period of time. Washburn, 101 Wn.2d at 179. Financial need is not a prerequisite. In re Marriage of Wright, 179 Wn. App. 257, 262, 319 P.3d 45 (2013). We reject Edmund's argument.

Edmund next contends that the award of maintenance as inequitable in view of the court's overall financial orders. He argues that, in light of the disproportionate distribution of property, the award of maintenance does not leave the parties in roughly equal financial positions for the rest of their lives.

Where the spouses were in a long term marriage, "the court's objective is to place the parties in roughly equal financial positions for the rest of their lives." Wright, 179 Wn. App. at 262 (citing Rockwell, 141 Wn. App. at 243). It is within the trial court's discretion to award both a disproportionate award of property and maintenance. Id. "The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be 'just.'" Id. at 269 (quoting In re

13

Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 294 (1990)). Future earning potential "is a substantial factor to be considered by the trial court in making a just and equitable property distribution." In re Marriage of Hall, 103 Wn.2d 236, 248, 692 P.2d 175 (1984).

Edmund asserts that Jacki receives nearly $1.3 million more than Edmund in property and his earning potential is not sufficient to equalize this disparity. He further argues that, during the nine years he is ordered to pay maintenance, he will not be able to begin accruing assets to bring his financial position closer to Jacki's. He relies on a model prepared by his expert to argue that Jacki's income will be greater than his while she is receiving maintenance of $8,500 per month.[3]

Edmund's argument is unpersuasive. At trial, Edmund's expert testified to various models projecting the parties' future financial positions. Jacki's expert disputed these projections. The trial court thus considered competing evidence regarding the parties' future finances. We do not reweigh the evidence on appeal. Rockwell, 141 Wn. App. at 242 (citing In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

The parties in this case are in their 50s. Their earning potential is vastly disparate, as Edmund has been earning over $500,000 and Jacki is capable of earning approximately $31,000. The trial court awarded Jacki 60 percent of the community property, one half of stock awards granted during the marriage, and

---

[3] In his reply brief, Edmund also relies on an appendix purporting to show the inequality in the parties' financial position over time. Because this appendix constitutes evidence not in the record before the trial court, it is not properly before this court on appeal. RAP 10.3(a)(8).

maintenance for nine years. Edmund has not demonstrated that, in the circumstances here, the trial court's award is unjust and thus constitutes an abuse of discretion.

Edmund next challenges the maintenance award on the grounds that it prevents him from taking advantage of a financial opportunity. At trial, Edmund testified that Microsoft has a policy of allowing long term employees to retire at age 55 with immediate vesting of all stock awards. He also stated that, under Microsoft's current policy, the same provision to retire early and vest all stock awards is available at age 58. Edmund further testified that Microsoft could change the provision for vesting all stock at early retirement at any time.

Edmund argues that the obligation to pay onerous maintenance for nine years prevents him from retiring at age 55 and locking in the value of his unvested stock awards. We reject this argument. The trial court considered all relevant factors, including Edmund's earning capacity and the parties' ages. The court awarded maintenance for nine years, apparently foreseeing that Edmund will work until the age of 62. Edmund fails to show that the trial court abused its discretion.

Unvested stock

Edmund raises several arguments concerning the trial court's award of one half of the stock awards that were granted during the marriage but had not yet vested at the time of trial. At trial, Edmund's expert explained that Edmund's unvested awards represented a right to the underlying stock at some point in the

15

future, contingent upon Edmund remaining employed. He testified that the awards were currently worth about $400,000. The trial court awarded one half of these awards to Jacki. In Exhibit A, the spreadsheet attached to the order, the court listed the amount of these unvested awards as $407,539 and divided that amount equally to Edmund and Jacki as separate property.

Edmund contends that the trial court abused its discretion in awarding one half of the unvested stock to Jacki. He asserts that the award was unnecessary and exacerbated the disparity between the parties' financial positions. We reject this argument. As discussed above, Edmund fails to show that, in the circumstances of this case, the trial court's award was an abuse of discretion.

Edmund also contends that the court's order fails to make clear whether the stock awards are property or income. He acknowledges that the court's order states that it is characterizing the stock as property. But he asserts that the court created confusion by later stating that it was awarding Jacki one half of this stock "[t]o equalize income over time as well as the vagaries of the stock market. . . ." CP at 66. Edmund asserts that remand is necessary to clarify the character of the awards.

Edmund is mistaken. The trial court stated that the awards were property, not income. Its later sentence referring to income explained why it was awarding Jacki a one half share of the property.

Finally, Edmund argues that the trial court erred in assigning a value to these unvested stock awards. He asserts that he does not own the stock until it

16

vests and its current value is thus $0. He contends that the valuation on Exhibit A is speculative and must be corrected because it inflates the amount of his actual separate property and creates an inference that he will receive assets that are not guaranteed.

We reject this argument. The value listed on Exhibit A reflects the testimony of Edmund's expert. The exhibit properly lists the amount as separate property to be awarded one half to each party. To the extent the value inflates Edmund's separate property, it also inflates Jacki's separate property. Edmund fails to show that the listed value caused any error in the trial court's distribution of property.

Attorney fees

Jacki requests attorney fees on appeal based on her need and Edmund's ability to pay. Under RCW 26.09.140, we may award attorney fees based on the financial resources of both parties. Here, however, the parties have been placed in roughly equal positions. We decline to award attorney fees to Jacki.

Affirmed.

WE CONCUR:

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 APR 17 AM 9:44